[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12352
Non-Argument Calendar

_____

D. C. Docket No. 06-00317-CR-JOF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAIN BENNETT,
a.k.a. Daine Bennett,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 21, 2009)

Before ANDERSON, CARNES, and MARCUS, Circuit Judges.

PER CURIAM:

Dain Bennett appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). FBI agents arrested Bennett after entering his mother's apartment to execute an arrest warrant for him. During a protective sweep of one of the apartment's bedrooms, which was occupied by Bennett's teenaged brother and a friend but not Bennett, agents located a rifle between a mattress and box spring. Bennett contends that the entry and search were unlawful. He challenges the district court's denial of his motion to suppress all evidence and statements resulting from his arrest because the agents (1) did not have a reasonable belief that his mother's apartment was his residence and so could not enter it without a search warrant and (2) improperly expanded the scope of their protective sweep outside Bennett's "grab area." He also argues that his later statements to a police officer should have been excluded as the fruit of the agents' unlawful conduct. We affirm.

Bennett contends that, because the agents did not have a search warrant, the search of his mother's apartment must be presumed unreasonable unless the government can prove it was lawful. He acknowledges that a valid arrest warrant would permit the agents to enter a dwelling they reasonably believed was his residence when they reasonably believed he was present. Bennett argues that the district court erred in concluding the agents reasonably believed his mother's

2

apartment was his residence, however, because his name was not on the lease and he only stayed overnight occasionally. He asserts that while his status as an overnight guest gave him a reasonable expectation of privacy in the apartment sufficient to allow him standing to challenge the search, it did not make him a resident. Bennett does not argue that the agents lacked a reasonable belief that he would be in the apartment when they entered it.

Review of a denial of a motion to suppress is a mixed question of law and fact. United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007). We review de novo the district court's application of the law to the facts, including whether government agents reasonably believed that a defendant resides at a particular location. See United States v. Magluta, 44 F.3d 1530, 1536-37 (11th Cir. 1995). We review factual findings only for clear error, construing all facts in the light most favorable to the prevailing party below. Id. at 1536. Warrantless searches and seizures inside a home are presumptively unreasonable. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). Nonetheless, an arrest warrant for a suspect carries a "limited authority" to enter a suspect's residence. Id. at 1263-64 (citing Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371 (1980)).

Agents executing an arrest warrant must have reason to believe that (1) "the location to be searched is the suspect's dwelling" and (2) "the suspect is within the

dwelling." Id. at 1263. The fact that a suspect may live somewhere else from time to time does not categorically prevent a dwelling from being the suspect's residence. See id. (discussing the multiple residences of college students). The reasonableness of the belief is evaluated based on "the facts and circumstances within the knowledge of the law enforcement agents . . . when viewed in totality." Magluta, 44 F.3d at 1535.

Before they entered the apartment, the Atlanta-based agents had been told by Ohio FBI agents that Bennett was living with his mother. An investigation by the Atlanta agents conducted shortly before the arrest revealed that Bennett had recently delivered the rent for the apartment to the building's landlord, that the landlord had spoken to Bennett when he answered the apartment's door during her follow-up on a noise complaint, and that Bennett's mother had told the landlord that Bennett was "in and out" of her apartment because the two were starting a cleaning business together. Although Bennett argues that some of this information is untrue, the magistrate judge determined that it was correct after assessing the credibility of the witnesses. This finding is not clear error. Based on these facts, we cannot say that the agents' belief that Bennett resided in the apartment was unreasonable under the totality of the circumstances.

Bennett next contends that the under-mattress search was conducted to

locate weapons and not people, despite the fact that a protective sweep authorized by <u>Maryland v. Buie</u>, 494 U.S. 325, 110 S. Ct. 1093 (1990), is limited to a cursory inspection of places where a person might be hiding. He argues that because the weapon discovered under the back bedroom's mattress was not within his grab area when he was arrested in the front bedroom, it was not admissible as the product of a search incident to a lawful arrest. Thus, Bennett asserts, the search was justified only if the agents had a particularized suspicion that the boys who were detained in the back bedroom were dangerous. He notes that agents cannot infer that third parties are dangerous simply because the arrested suspect or the crime charged is dangerous. He asserts that agents had no reason to think that the boys in the back bedroom posed a threat.

Even if the boys were dangerous, Bennett argues that they were under the agents' control and were not a potential threat at the time of the mattress search. Bennett points out that the rifle discovered under the mattress was never within their grab area because the boys were handcuffed on the floor, and he asserts that agents cannot manipulate the locations of suspects so that the areas they wish to search move into the grab area. Bennett claims his mother never consented to a search of any part of her apartment, or if she did, her consent was tainted by the unlawful conduct of the agents.

Agents are sometimes permitted to conduct a quick and limited search of a location incident to an arrest, but that protective sweep is limited "to a cursory inspection of those places in which a person might be hiding." Delancy, 502 F.3d at 1306 (internal quotation marks omitted). A protective sweep is only justified when there is reasonable suspicion that the area to be swept harbors an individual dangerous to the police. Id. at 1307. Previously we have declined to address the precise scope of a search permitted as part of a protective sweep, though we have suggested that a search under the mattress of a bed may be beyond this scope because it is unlikely a person could hide there. See id. at 1307, 1313 n.10 (noting, after an officer testified that he checked under a mattress to determine if anyone was hiding there, that the court had "a hard time seeing how lifting the mattress [from a bed with a box spring] is consistent with a search 'narrowly confined to a cursory inspection of those places in which a person might be hiding'" (citation omitted)).

Law enforcement agents are also permitted to search for weapons or evidence incident to a suspect's lawful arrest, though the scope of that search is limited to the grab area within the suspect's immediate reach. United States v. Ricks, 817 F.2d 692, 696 (11th Cir. 1987) (citing Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969)). Agents may search for weapons within

6

range of a person's "immediate grasp" even when they are not in the process of conducting a lawful arrest, but only based on reasonable suspicion that the person poses a danger to the agent. See Michigan v. Long, 463 U.S. 1032, 1049-52, 103 S. Ct. 3469, 3480-83 (1983) (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), to justify an officer's protective search of areas over which the suspect would have had immediate control and which could contain a weapon after the officer observed a large knife in the car that the suspect was about to reenter).

On the morning of Bennett's arrest, at least seven agents entered his mother's apartment looking for him. The FBI sent that many agents because the crime underlying one of the arrest warrants—aggravated assault with a gun—indicated that Bennett might be armed. The agents who conducted the protective sweep of the back bedroom expected to find someone dangerous hiding there: Bennett. Thus their initial sweep of the room for people, during which they found the two teenaged boys, was justified. See Delancy, 502 F.3d at 1306-07.

Whether the later search under the mattress was lawful, however, is a more difficult question. The agent who lifted the mattress admitted that he was looking for hidden weapons rather than hidden people, which is consistent with our earlier suggestion that it is hard to imagine a person could hide there. See id. at 1313 n.10. That search is justified, then, only if it is limited to the immediate grasp area

7

of a person who the agent reasonably suspects poses a danger to his safety. See Long, 463 U.S. at 1049-52, 103 S. Ct. at 3480-83. Given the size of the boys and the situation in which the agents encountered them, we cannot say the agent was unreasonable in suspecting that the boys were potentially dangerous.

The record shows that although the boys were young teenagers, they looked fairly grown up. They stood nearly six feet tall and had some facial hair. When agents discovered them, the agents did not yet know that Bennett had been found and arrested in the front bedroom. Because the boys had not been identified at the time of the mattress search, the searching agent was unsure if either of the boys was Bennett. That one of the boys could have been the suspect, who was known to be dangerous, supports the agent's decision to search their grab area. Whether the agent's search was so limited is a closer question.

After ordering the boys out of bed onto the floor and cuffing their hands behind their backs, agents decided to return the boys to the bed to question them. To secure the area before the move, one agent shook the sheets and pillows and then lifted the mattress. He uncovered a rifle between the mattress and box spring, about a foot from the edge of the bed. When the agent decided to sit the boys on the bed for questioning, he was within his authority to search those areas of the bed

that came within their grab area.[1]  Although it may have been difficult to do while handcuffed, it is not impossible that the boys could have reached under the mattress for a weapon.  See, e.g., Roper, 681 F.2d at 1357-59 (upholding search where arrestee was handcuffed in motel hallway and escorted inside room by federal agents prior to search of unlocked metal briefcase); United States v. Queen, 847 F.2d 346, 349, 353-54 (7th Cir. 1988) (upholding search where arrestee was handcuffed behind his back and guarded by two armed officers before search of closet three feet away).  A suspect has a leg up on agents entering an unfamiliar location because he knows where hidden weapons can be found, and that advantage could aid even a restrained person in reaching a weapon before agents can react.

---

[1] We encountered a similar situation in Delancy, in which the defendant challenged as overbroad a weapons search of the couch where he was moved for interrogation, but other aspects of that case kept us from reaching the issue.  See 502 F.3d at 1307.  Delancy argued that the officer could have questioned him where he was being held initially rather than moving him to the couch, which made the search of the couch impermissible.  Id.  Bennett makes a similar argument here.  Indeed, officers cannot move detained people purely to bring an area they wish to search into that person's grab area.  See, e.g., United States v. Roper, 681 F.2d 1354, 1358 n.4 (11th Cir. 1982).

Where the move is not pretextual, however, courts addressing the issue have found searches in the grab area of the new location to be lawful.  Compare United States v. Hernandez, 941 F.2d 133, 137-38 (2d Cir. 1991) (upholding a search in which an officer ran his hand between a mattress and box spring because he intended to move the handcuffed person to the bed for interrogation), with United States v. Blue, 78 F.2d 56, 59-60 (2d Cir. 1996) (rejecting a search in which an officer, who had no intention of moving the handcuffed suspect to the bed, lifted up a mattress).  Here, the magistrate judge found that the agent intended to move the boys to the bed to question them and not simply to bring the bed within their grab area.  That finding is not clearly erroneous, so the agent's decision to relocate the boys does not affect the validity of the search.

We have never addressed whether an agent sweeping a detained person's grab area may actually lift a mattress to check for weapons, though we have noted that reaching beneath a mattress is permissible when an agent does so as a safety precaution. Compare United States v. Quigley, 631 F.2d 415, 417-19 (5th Cir. 1980) (upholding under-mattress search where conducted as a precaution for officers' safety), with United States v. Cueto, 611 F.2d 1056, 1062 (5th Cir. 1980)(rejecting under-mattress search where conducted incident to arrest rather than to ensure officers' safety).[2] But while our decision here would be easier had the agent limited his search to running his hand between the mattress and box spring as the officers did in Quigley and Hernandez, we do not think law enforcement should be required to endanger themselves by blindly sticking their hands into unknown and unseen spaces. Nor do we think only those agents willing to put their hands into concealed areas—which could contain needles, knives, or worse—deserve to be protected from weapons in a suspect's grab area. If there is reason to search the edge of a mattress by touch, there is reason enough to lift it up.

Because the agent had a reasonable belief that the boys could be dangerous and his reason for moving them to the bed was legitimate, his sweep of the boys'

---

[2] In our en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

grab areas was properly limited.  The under-mattress search was not unlawful.  As a result, we do not need to decide whether Bennett's mother's consent was tainted—or given at all.  Further, because the agents' conduct was not unlawful, Bennett's challenged statements were not the fruit of unlawful conduct.  The weapon and statements were properly admitted into evidence, so the district court's denial of Bennett's suppression motion is **AFFIRMED**.