[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10845
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 27, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00206-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TARAS LAFRANCE EDWARDS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(August 27, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Taras LaFrance Edwards appeals his convictions for possession with intent

to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 992(g)(1). Edwards contends that the district court should have granted his motion to suppress because authorities exceeded the scope of a search warrant. We find no error and AFFIRM.

## I. BACKGROUND

In June 2008, a grand jury in the Southern District of Alabama indicted Edwards for: (1) possession with intent to distribute approximately 59.7 grams of crack cocaine, (2) possession with intent to distribute approximately 194.4 grams of cocaine, (3) and possession of a firearm by a convicted felon. Doc. 6 at 1-2.[1]

At a pre-trial hearing on Edwards' motion to suppress, Deputy Maurice Fitch of the Choctaw County Sheriff's Department testified that on 24 February 2008, he responded to a complaint from Pearly Reed that her dog had been shot by a neighbor. Doc. 102 at 4, 5, 8. The dog had crawled under Reed's house by the time Deputy Fitch arrived. Id. at 23. A trail of blood snaked along the driveway of Reed's home. Id. at 23, 41. Although Deputy Fitch could see the dog's leg quivering, he was unable to reach the dog or inspect the wound.[2] Id. at 23, 41-42. Reed stated she heard a loud boom and then saw her bleeding dog cross the road.

---

[1] Record citations correspond to the district court's docket numbers.

[2] The dog survived the incident but suffered permanent injuries. Id. at 24.

Id. at 5, 23.  Based on the wound's size, Reed believed a large caliber weapon had been used, although she did not know for certain.  Id. at 16, 23.  Reed called Edwards, her neighbor, and spoke with his mother.  Id. at 7.  Shortly thereafter, Edwards told Reed that the dog tried to bite him, he was sorry, and he would buy her another dog.  Id. at 7-8.  Edwards did not specifically admit that he shot the dog.  Id. at 8.

Deputy Fitch ran a records check on Edwards and discovered that he was a convicted felon for the offense of unlawful distribution of a controlled substance.  Id. at 15.  He then presented the following application and affidavit for a search warrant:

> On 02/25/2008, I received a complaint that on 02/24/2008 Taras Edwards shot a neighbors [sic] dog with a firearm.  Mr. Taras [sic] is a convicted felon for the charge of Unlawful Distribution of a Controlled Substance.  Since Mr. Taras is a convicted felon he is forbidden from possessing firearms or ammunition.  I have received numerous complaints of narcotics activity occurring at this location.  Mr. Taras also has an outstanding warrant with the Lauderdale County, Mississippi Sheriff's Office for Probation Violation for Receiving Stolen Property.  According to the complainant, Mr. Taras admitted that he shot the dog.
>
> Premises to be searched includes residence, curtilage, all outbuildings, structures, parcels, packages, and vehicles whether locked or unlocked and all persons on the premises.

Doc. 29-2 at 1.  The warrant application included an attachment listing the items to

be searched for and seized, including all records, currency, photographs, and paraphernalia relating to drug dealing; safes and strong boxes; false identification; firearms; and controlled substances. Id. at 2-3. The issuing judge studied the affidavit and questioned Deputy Fitch as to probable cause for the warrant. Doc. 102 at 28. Deputy Fitch relayed the details of the shooting incident and the credible nature of Reed based on his past interactions with her. Id. at 39-41.

Deputy Fitch testified at the suppression hearing that the purpose of the search warrant was to uncover firearms, not drugs. Id. at 30, 38. As Deputy Fitch did not know what type of weapon had been used to shoot Reed's dog, he did not rule out any type of firearm. Id. at 16. He was thus searching for rifles as well as handguns. Id. Deputy Fitch knew that illegal firearms and narcotics are often connected, and he was prepared to seize anything illegal that he found during the execution of the search warrant. Id. at 39. The attached list of items to be seized was a standard form used by the Sheriff's Office. Id.

When the warrant was executed, officers found shotgun and handgun ammunition, a 12-gauge shotgun, and a small quantity of marijuana. Id. at 16-18, 20. At some point, the officers discovered a safe,[3] which Deputy Fitch described

---

[3] Deputy Fitch testified at the suppression hearing that the safe was found in a van. See id. at 44. At trial, however, Deputy Fitch testified that the safe was found nailed to the floor underneath a bathroom cabinet. See Doc. 96 at 57 .

as ten to fifteen inches wide, six to seven inches high, and ten inches deep. Id. at 43. In Deputy Fitch's opinion, the safe was large enough to hold a handgun. Id. at 19. The officers decided to open the safe because they had not yet recovered a handgun matching the ammunition previously found in the residence. Id. at 48. Prying open the safe, the officers discovered a significant quantity of crack cocaine concealed in two socks. Id. at 43-44. Concealed in a third sock was a bulk roll of cash totaling $19,367. Id. at 19, 44. According to Deputy Fitch, the socks were large enough to conceal a small caliber handgun. Id. at 46. Deputy Fitch did not believe a gun was actually concealed inside the socks, though he nevertheless suspected that they could contain a handgun. Id. at 46, 48. Edwards, who was absent during the search, returned home after the warrant was executed and admitted to an officer that he had shot Reed's dog. Id. at 24, 42-43.

The district court determined that "the search was only good as to looking for firearms." Id. at 63. Having viewed the photographs of the safe and socks, the district court found that both the safe and socks were large enough to house a small firearm. Id. at 64. Consequently, the court denied the motion to suppress on grounds that the items in the safe were found by "inevitable discovery." Id.

Edwards was convicted and sentenced to concurrent terms of 300 months of imprisonment for possession with intent to distribute crack cocaine and 120

months of imprisonment for being a felon in possession of a firearm, to be followed by 10 years of supervised release. Doc. 76 at 1-3. The government dismissed the charge of possession with intent to distribute cocaine. Id. at 1.

On appeal, Edwards argues that the trial court erred in not suppressing the cocaine and cash found in the locked safe. Edwards submits that the search warrant only authorized the search and seizure of firearms. In particular, Edwards maintains the officers should only have been looking for large caliber weapons based on the dog's wound. There was nothing about the safe indicating that it contained a large weapon or any type of firearm. Moreover, Edwards asserts that a shotgun had already been found. As there was nothing to justify opening the safe, Edwards contends the officers exceeded the scope of their warrant by performing a general, exploratory search.

## II. DISCUSSION

A district court's denial of a motion to suppress is a mixed question of law and fact. See United States v. Bennett, 555 F.3d 962, 964 (11th Cir. 2009) (per curiam), petition for cert. filed, (U.S. Apr. 21, 2009) (No. 08-10038). We review the district court's factual findings only for clear error, viewing all facts in favor of the government as the prevailing party. See id. at 965. The district court's application of the law to those facts is reviewed de novo. See id. at 964.

6

The Fourth Amendment to the United States Constitution requires that a search warrant "'particularly describ[e] the place to be searched, and the persons or things to be seized'" in order to guard against "general, exploratory searches." United States v. Khanani, 502 F.3d 1281, 1289 (11th Cir. 2007). Any seizure resulting from a search that exceeds the scope of a warrant is thus unconstitutional. See United States v. Jackson, 120 F.3d 1226, 1228 (11th Cir. 1997) (per curiam). The scope of the search generally includes any area where the item in question may be found, even if the search requires "separate acts of entry or opening." United States v. Martinez, 949 F.2d 1117, 1120 (11th Cir. 1992). In Jackson, for example, we concluded that officers did not exceed a search warrant for cocaine when they opened a closet door and found a firearm instead of drugs. See Jackson, 120 F.3d at 1229. Similarly, government agents are authorized to break open locked containers which may contain objects described in the warrant. See United States v. Gonzalez, 940 F.2d 1413, 1420 (11th Cir. 1991) (search of locked briefcase in defendant's home fell within scope of search warrant for documents and currency); United States v. Morris, 647 F.2d 568, 572-73 (5th Cir. Unit B 1981) (search of locked jewelry box authorized by warrant to search defendant's home for proceeds of bank robbery).

Here, Edwards does not dispute that the officers were authorized by the

7

search warrant to look for firearms. Even assuming the officers had recovered a shotgun prior to opening the safe, it was permissible for them to continue to search for other firearms. See Jackson, 120 F.3d at 1229 ("Although [the officers] had located some cocaine in the bathroom, it was within the scope of the warrant to continue the search."). Furthermore, the officers' search was not limited to large caliber weapons. Deputy Fitch specifically testified that he was searching for rifles and handguns alike because he could not ascertain what type of weapon had injured Reed's dog. Deputy Fitch believed the safe could have contained a small handgun and the district court agreed. Based on our review of the record, this factual finding is not clearly erroneous. The officers were therefore authorized to open the safe in their search for firearms and seize the cocaine and cash found inside. See id.; Gonzalez, 940 F.2d at 1420.

## III. CONCLUSION

The district court correctly denied Edwards' motion to suppress. As the district court found, the safe was large enough to contain a small firearm. Consequently, the officers did not exceed the scope of the warrant by searching the safe and seizing the contraband found therein. We thus AFFIRM Edwards' convictions.

**AFFIRMED.**

8