[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2010
JOHN LEY
CLERK

No. 10-10471
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cr-00378-BBM-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SIRLONZA FARLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

(November 10, 2010)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Sirlonza Farley appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). On appeal, Farley argues that the district court erred by denying his motion to suppress evidence obtained by law enforcement officers after they forcibly entered his residence in order to execute outstanding, valid arrest warrants against him. Specifically, Farley contends that the entry violated his Fourth Amendment rights because the officers did not have a reasonable belief that the building entered was his residence or that he was present there at the time of entry.[1]

Under the Fourth Amendment, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). We therefore conduct "a two-part inquiry: first, there must be a reasonable belief that the location to be searched is the suspect's dwelling, and second, the police must have 'reason to believe' that the suspect is within the dwelling." United States v. Magluta, 44 F.3d 1530, 1533 (11th Cir. 1995). We evaluate an officer's reasonable belief in light of the

_____

[1] Upon the denial of a motion to suppress, "[w]e review de novo the district court's application of the law to the facts, including whether government agents reasonably believed that a defendant resides at a particular location. We review factual findings only for clear error, construing all facts in the light most favorable to the prevailing party below." United States v. Bennett, 555 F.3d 962, 965-66 (11th Cir.) (internal citation omitted), cert. denied, 130 S.Ct. 64 (2009).

2

totality of the facts and circumstances within his knowledge at the time of entry. Id. at 1535.

In this case, Thomas Kinsella of the U.S. Marshals Service forcibly entered 1006 Hubbard Street in Atlanta, Georgia in order to execute outstanding arrest warrants against Farley. Kinsella's belief that 1006 Hubbard was Farley's residence initially rested on information provided by a confidential information ("CI"). This CI was a registered informant who had provided Kinsella with reliable information on at least five previous occasions. The CI informed Kinsella both that Farley was a fugitive from justice and that his "official" residence was 1008 Hubbard, two pieces of non-public information that Kinsella later corroborated. The CI also provided Kinsella with the specific location of Farley's bedroom inside 1006 Hubbard and informed Kinsella that Farley was dealing drugs from that location.[2] Moreover, shortly before Kinsella entered 1006 Hubbard, he actually observed four men through the window, one of whom looked like Farley. The district court credited Kinsella's testimony on this point, and we see no reason to disturb that finding. Thus, the district court properly concluded

---

[2] Thus, although Farley emphasizes that Kinsella did not ascertain the basis of the CI's knowledge, Kinsella was permitted to rely on the CI given the CI's credibility in the past and his provision of detailed, non-public information, some of which Kinsella later corroborated. See Illinois v. Gates, 462 U.S. 213, 233, 243-46 (1983).

that, under the totality of the facts and circumstances, Kinsella had a reasonable belief that 1006 Hubbard was Farley's residence.

Kinsella also had a reasonable belief that Farley was present in 1006 Hubbard at the time of entry. As just mentioned, Kinsella personally observed a man resembling Farley through the window before he entered. Moreover, Kinsella's belief that this man was Farley (who, again, was a fugitive) was bolstered by the fact that, upon seeing Kinsella (who was dressed in full uniform), the men immediately ran upstairs and ignored Kinsella's repeated requests to gain entry. This sighting further corroborated the CI's tip that Farley would be at 1006 Hubbard that morning. Thus, regardless of whether a time-of-day presumption also applied, the district court properly concluded that, under the totality of the facts and circumstances, Kinsella had a reasonable belief that Farley was inside 1006 Hubbard at the time of entry.[3] Accordingly, we affirm.

**AFFIRMED.**

---

[3] Contrary to Farley's argument, this conclusion is not affected by the fact that, before the time of entry, Kinsella's partner questioned the resident of 1008 Hubbard about Farley and that the resident (who later turned out to be Farley's mother) speculated that the men living at 1006 Hubbard were "probably at work."