[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13992

_____

D.C. Docket No. 1:16-cr-20837-PAS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HARRISON GARCIA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 9, 2019)

Before TJOFLAT, MARTIN, and TRAXLER,[*] Circuit Judges.

MARTIN, Circuit Judge:

Harrison Garcia was tried and convicted of three drug offenses and two firearms offenses. Mr. Garcia appeals the denial of his motion to suppress and six adverse trial rulings, as well as the sufficiency of the evidence supporting his firearms convictions. After careful review, and with the benefit of oral argument, we affirm.

**I.**

In late 2015, a confidential informant told law enforcement that Mr. Garcia was selling drugs. Officers began surveilling one of his residences on SW 29th Street in Miami, Florida. They also began monitoring his profile on the social media service Instagram, where they discovered Mr. Garcia posted photos of himself with drugs and firearms.

Based on the surveillance, officers decided to make two controlled drug buys with a confidential informant. At both buys, Mr. Garcia exchanged narcotics for money. A few weeks later, officers searched the garbage at the 29th Street house. The search turned up marijuana paraphernalia and empty bottles of

---

[*] Honorable William B. Traxler, Jr., United States Circuit Judge for the Fourth Circuit, sitting by designation.

promethazine with codeine (a high-strength cough syrup, known by the slang "sizzurp" or "lean," that produces a mild feeling of euphoria).

With evidence from the controlled buys and the trash pull, officers got a warrant to search the 29th Street house and made a plan to arrest Mr. Garcia.

About 5:00 in the afternoon the day of the planned arrest, officers saw Mr. Garcia leave the 29th Street house with a backpack. He drove off in a Suburban with three other men. Some distance away, twenty agents stopped the Suburban, arrested Mr. Garcia, and seized his backpack. The backpack contained a Glock .380, a green baggie filled with marijuana and moon rocks, and Mr. Garcia's wallet and identification.

Once Mr. Garcia was secure, officers informed him they had a search warrant for the 29th Street house. They asked him for the keys to the 29th Street house to avoid breaking the door down, and Mr. Garcia handed them over.

Law enforcement then went to the 29th Street house and searched it. A Homeland Security Investigations (HSI) agent named Rimas Sliazas stayed with Mr. Garcia where he was arrested while other officers searched the house. In the search of the 29th Street house, officers found marijuana; moon rocks; a digital scale with marijuana residue on it; and two firearms, a Glock 9 millimeter and an FN Five-Seven.

3

About two hours after his arrest, Agent Sliazas brought Mr. Garcia to the 29th Street house.  Agent Sliazas and Kevin Selent, another HSI agent, Mirandized Mr. Garcia and asked for his consent to search the 29th Street house as well as a condo Mr. Garcia also owned.  Mr. Garcia waived his Miranda rights, consented to the searches, and signed forms confirming the waiver and consent.  Mr. Garcia also gave agents the passcodes to his cell phones.  And he admitted he was en route to a drug transaction when he left the 29th Street house.

The officers then took Mr. Garcia to his condo, where he again handed over the key.  After a search, agents seized "a couple thousand pills" of alprazolam (Xanax), two firearms—an AK-47 and a Uzi 9 millimeter—and several empty medicine bottles.

Over the course of the evening, Mr. Garcia admitted to owning all the drugs and firearms the officers found.  He said he trafficked in narcotics to supplement his main source of income—working in the music industry.  He used the proceeds from his drug sales to buy high-end cars and firearms.  He said he used the firearms for protection from rival drug dealers.

Later, law enforcement extracted text messages from Mr. Garcia's phones.  Those messages showed Mr. Garcia sold drugs by phone and had photographs of promethazine with codeine.

4

## II.

The government indicted Mr. Garcia on five counts.  Three counts charged drug crimes: conspiracy to possess with intent to distribute marijuana, alprazolam (Xanax), and promethazine with codeine, in violation of 21 U.S.C. § 846; maintaining a drug-involved premises, in violation of 21 U.S.C. § 856; and possessing with intent to distribute Xanax, in violation of 21 U.S.C. § 841.  The two remaining counts charged Mr. Garcia with possessing a firearm in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c).  One of the § 924(c) counts charged possession of the F.N. Five-Seven, Glock 9 millimeter, and Glock .380 in furtherance of maintaining the drug involved premises, the 29th Street house.  The other charged possession of the AK-47 and Uzi 9 millimeter found in Mr. Garcia's condo in furtherance of possessing with intent to distribute Xanax.

Mr. Garcia filed a motion to suppress the statements he made after his arrest, claiming he invoked his right to counsel as soon as he was arrested.[1]  A magistrate judge held a hearing on the motion and heard Mr. Garcia's testimony.  The magistrate judge issued a Report and Recommendation finding Mr. Garcia's testimony that he invoked his right to counsel was not believable.  The District Court adopted the Report and Recommendation and denied Mr. Garcia's motion to

---

[1] Below, Mr. Garcia also contended the search warrant contained false statements that rendered it invalid under Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978), but he does not press that argument on appeal.

5

suppress his post-arrest statements based on the adverse credibility finding of the magistrate judge.

Mr. Garcia moved to reconsider the denial of his suppression motion, asserting, among other things, that his testimony that he invoked his right to counsel was "unrebutted." The District Court held a hearing on the reconsideration motion during which Mr. Garcia withdrew his motion. The District Court issued a supplemental order, again adopting the magistrate judge's finding that Mr. Garcia never invoked his right to counsel.

Mr. Garcia proceeded to trial, and the jury convicted him of all counts. The District Court denied all post-trial motions and sentenced Mr. Garcia to a total of 30 years and one day in prison. The District Court imposed concurrent one day sentences for each of the drugs convictions. As the District Court was required by law to do, it imposed a five-year sentence on the first § 924(c) count and twenty-five years on the second one, to run consecutively to each other. The District Court set the one-day sentences for the drug counts to run consecutively to the sentences on the firearms counts.

This appeal followed.

### III.

We begin with Mr. Garcia's appeal of the denial of his motion to suppress. "Review of a denial of a motion to suppress is a mixed question of law and fact."

6

United States v. Bennett, 555 F.3d 962, 964 (11th Cir. 2009) (per curiam).  This Court "review[s] de novo the district court's application of the law to the facts" but reviews "factual findings only for clear error, construing all facts in the light most favorable to the prevailing party below."  Id. at 964–65.

Mr. Garcia took the stand at the suppression hearing and testified he invoked his right to counsel three times the night of his arrest: once immediately after his arrest, once inside the 29th Street house, and once after he received Miranda warnings.  If indeed Mr. Garcia had made these invocations of his right to counsel, the officers would have violated his Fifth Amendment rights by continuing to question him.  See Edwards v. Arizona, 451 U.S. 477, 481–84, 101 S. Ct. 1880, 1883–85 (1981).  However, the District Court found, as the decider of fact, that Mr. Garcia did not ask for a lawyer.  The District Court did not believe Mr. Garcia's testimony and instead credited Agent Sliazas's version of events.  Agent Sliazas testified he stayed with Mr. Garcia from the time of the arrest until the time of the Miranda warnings.  According to Agent Sliazas, Mr. Garcia never asked for a lawyer in his presence, before or after the Miranda warnings.

Crediting Agent Sliazas's version of events was not clear error, particularly in light of the deference we afford trial court credibility determinations.  See United States v. McPhee, 336 F.3d 1269, 1275 (11th Cir. 2003).  We affirm the denial of the motion to suppress.

**IV.**

We turn now to the six trial rulings that are the subject of Mr. Garcia's appeal. If a defendant preserves his objection, we review evidentiary rulings for abuse of discretion. United States v. Mitrovic, 890 F.3d 1217, 1220 (11th Cir. 2018). We also review for abuse of discretion a district court's decision to strike witness testimony when the witness invokes her Fifth Amendment right against self-incrimination. See United States v. McKneely, 69 F.3d 1067, 1076 (10th Cir. 1995). A district court abuses its discretion when it makes a clear error of judgment or applies the wrong legal standard. United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). An erroneous evidentiary ruling will not necessitate reversal unless "the resulting error was not harmless." Mitrovic, 890 F.3d at 1220; see also Fed. R. Crim. P. 52(a). An error is harmless if it "had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict." United States v. Barton, 909 F.3d 1323, 1331 (11th Cir. 2018) (quotation marks omitted).

We review rulings to which the defendant did not object for plain error. Frazier, 387 F.3d at 1268 n.21. To show plain error, the defendant must show "(1) there is an error; (2) the error is plain or obvious; (3) the error affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) the error seriously affects the fairness, integrity, or public reputation of a judicial

proceeding." Id. If the defendant invited the error, the invited error doctrine applies, and "the Court is precluded from reviewing that error on appeal." United States v. Brannan, 562 F.3d 1300, 1306 (11th Cir. 2009) (quotation marks omitted).

As we explain, none of the rulings Mr. Garcia challenges were error, plain or otherwise. Also, Mr. Garcia invited a fair number of the rulings he now calls error.

A.

Mr. Garcia first challenges the admission of Instagram posts, Instagram direct messages, and text messages. He says the posts and messages were not authenticated, were hearsay, were more prejudicial than probative under Federal Rule of Evidence 403, and were admitted in violation of the Sixth Amendment Confrontation Clause. But beyond stating the bald claim, he offers argument only on his claim that the posts and messages were not authenticated. He also says it was error to allow Agent Selent to testify to slang terms in the posts and messages. Our review reveals no error.

Mr. Garcia stipulated to the admissibility of the text messages and phone data, so he cannot now challenge their admission. The Instagram posts and messages were properly authenticated by a records custodian, as Mr. Garcia acknowledged at the pretrial conference. Mr. Garcia makes no argument to this Court that the posts and messages were hearsay or were more prejudicial than probative, so he has abandoned any challenge he may have had to them. See

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681–82 (11th Cir. 2014).

Even if he had offered arguments, the posts and messages would be admissible.

Any post Mr. Garcia made or message he sent could be admitted into evidence as a

party admission under Federal Rule of Evidence 801(d)(2).  Messages he received

in response could serve the non-hearsay purpose of providing context for the

conversation.  See United States v. Price, 792 F.2d 994, 996–97 (11th Cir. 1986).

We see no basis for holding that the District Court abused its discretion in allowing

the posts and messages in under Rule 403.  Cf. Aycock v. R.J. Reynolds Tobacco

Co., 769 F.3d 1063, 1069 (11th Cir. 2014) (noting "a district court's discretion to

exclude evidence under Rule 403 is narrowly circumscribed" with the "balance . . .

struck in favor of admissibility" (quotation marks omitted)).

Neither did admitting the posts and messages violate the Confrontation

Clause.  The Confrontation Clause bars admission of "testimonial statements," or

statements made for the purpose of establishing some fact for use in a prosecution.

See Crawford v. Washington, 541 U.S. 36, 51–54, 124 S. Ct. 1354, 1363–65

(2004).  The posts and messages were not testimonial by that standard.  There is no

indication anyone made a post or sent a message with the expectation the post or

message would be used in a prosecution.

As for Mr. Garcia's other argument, he did not object to the bulk of Agent

Selent's testimony interpreting slang in the posts, objecting only to Agent Selent's

explanation that "choppa" means AK-47.  Taking the unobjected-to testimony first, we see no plain error.  The unobjected-to testimony concerned drug and firearms slang.  "The operations of narcotics dealers, including drug codes and jargon, are proper subjects of expert testimony."  United States v. Emmanuel, 565 F.3d 1324, 1335 (11th Cir. 2009).  Agent Selent testified that he had years of law enforcement experience and familiarity with drug and firearms terminology.  On this record, and in the absence of an objection, there was no plain error in admitting Agent Selent's testimony.  See Frazier, 387 F.3d at 1268 n.21.  Nor do we see anything that would call into question the integrity or reputation of the judiciary.  See id.  In any event, the government put on an expert whose testimony to the meaning of various slang terms was consistent with Agent Selent's testimony.  Mr. Garcia does not challenge that expert's testimony on appeal, so even if there had been error, it was harmless.

As to admitting the objected testimony regarding the meaning of "choppa," we see no abuse of discretion.  Mr. Garcia objected to the "predicate" for Agent Selent knowing that "choppa" means AK-47.  Agent Selent then testified to his law enforcement experience and familiarity with firearms slang.  That was a sufficient basis to admit the "choppa" testimony.

11

B.

Mr. Garcia next challenges testimony Agent Selent gave regarding a confession made by an unindicted co-conspirator. The confession was taped but neither the tape nor the existence of the tape were disclosed to the defense. Mr. Garcia says this failure to disclose violated Federal Rule of Criminal Procedure 16 and requires a new trial. He says Agent Selent's testimony about the confession was hearsay, violated his Confrontation Clause rights, and was not the best evidence of the co-conspirator's statement. Each of these arguments fail.

At the outset, we note that Mr. Garcia himself elicited the testimony he now says requires a new trial. Agent Selent testified the co-conspirator accompanied Mr. Garcia to one of the controlled buys. Mr. Garcia's attorney asked if Agent Selent knew whether the associate knew Mr. Garcia took drugs to sell. Agent Selent responded he did. Asked how he knew that, Agent Selent said the associate came to his office and offered a full confession, which was taped. He acknowledged the taped confession was not provided to Mr. Garcia for his defense.

Rule 16 requires the government to disclose the defendant's oral, written, or recorded statement. Fed. R. Crim. P. 16(a)(A), (B). It does not require disclosure of the statement of an unindicted co-conspirator. See id. The District Court correctly ruled there was no discovery violation in the nondisclosure of the confession. In order to prevail on a Rule 16 challenge, a defendant must show both

12

a violation and prejudice.  United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987).

Mr. Garcia has shown no prejudice.  He says the confession "surprised" him, but he

has not demonstrated how his strategy would have changed if the government

disclosed the confession.  Cf. id. at 606–09 (vacating a conviction where the

government failed to disclose the defendant's recorded statement and then used it

for impeachment).  The District Court did not abuse its discretion in denying a

mistrial.

The hearsay, Confrontation Clause, and best evidence arguments fare no

better.[2]  Mr. Garcia, not the government, elicited the testimony he now says is

hearsay, so he invited the confession's admission, and we will not review it.  See

United States v. Parikh, 858 F.2d 688, 695 (11th Cir. 1988) ("We hold that the

admission of out of court statements by a government witness, when responding to

an inquiry by defense counsel, creates 'invited error.'").  In any event, the evidence

had a plain non-hearsay purpose, made obvious by the question Mr. Garcia's

attorney asked.  The question was intended to show how Agent Selent knew that the

associate knew Mr. Garcia sold drugs at the controlled buys.  The Confrontation

Clause was not violated because it "is not implicated where the defendant seeks to

introduce hearsay declarations as part of his defense."  Id.  And, finally, the best

---

[2] Mr. Garcia also suggests the testimony of another HSI agent, Agent Sonn, was hearsay. But Agent Sonn testified outside the jury's hearing, so nothing he said could have swayed the verdict.

13

evidence rule plainly does not apply. The best evidence rule requires admission of an original recording to prove the recording's content. Fed. R. Evid. 1002. Agent Selent testified not to the content of the recording, but to the content of a conversation he was a party to. See United States v. Howard, 953 F.2d 610, 612 (11th Cir. 1992) (per curiam). That was proper.

C.

Mr. Garcia next challenges the admission of Instagram posts and messages that described an incident in which he shot an AK-47 at someone. He says their admission violated Federal Rule of Evidence 404(b), which prohibits the admission of prior bad acts to prove conduct in conformity with those bad acts. This argument fails as well.

First, Mr. Garcia did not object on 404(b) grounds below. There was certainly no plain error in admitting the posts and messages. No precedent suggested to the District Court it would abuse its discretion by admitting this evidence under Rule 404(b). See United States v. Ramirez-Flores, 743 F.3d 816, 822 (11th Cir. 2014) (noting that "[a]n error is 'plain' if controlling precedent from the Supreme Court or the Eleventh Circuit establishes that an error has occurred"). Anyway, the post and messages serve a purpose other than proving propensity to use firearms. They show access to and knowledge of how to use an AK-47. Rule

14

404(b) allows the admission of prior bad acts evidence to prove facts like these. See Fed. R. Evid. 404(b)(2). It was not plainly wrong to admit this evidence.

D.

Mr. Garcia next argues it was error to admit two prior withheld adjudications for possession with intent to distribute drugs. Pointing to United States v. Clarke, 822 F.3d 1213 (11th Cir. 2016) (per curiam), he says withheld adjudications do not count as convictions under Florida law and are not admissible under Rule 404(b) for this reason. He also says their admission violated the Confrontation Clause. And finally, he says the government cannot use his past convictions to prove his guilt of the instant offense. These arguments fail.

Taking these arguments in reverse order, Mr. Garcia is of course correct that the government cannot use past convictions to prove guilt of the present offenses. See Michelson v. United States, 335 U.S. 469, 475–76, 69 S. Ct. 213, 218 (1948). But under this Court's precedent, the government was permitted to use prior bad acts to prove Mr. Garcia's intent, which he had put at issue by pleading not guilty. See United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997). Admitting the withheld adjudications did not run afoul of Michelson.

Allowing admission of the withheld adjudications did not violate the Confrontation Clause, either. This is for the same reason admitting the Instagram

15

posts and messages did not: there is no indication the withheld adjudications are testimonial. See Crawford, 541 U.S. at 51–54, 124 S. Ct. at 1363–65.

And, finally on this point, Mr. Garcia's reliance on Clarke is inapposite. Clarke concerned whether a withheld adjudication counts as a "conviction" under Florida law for purposes of violating the federal felon-in-possession statute, 18 U.S.C. § 922(g). Clarke, 822 F.3d at 1214. Whether the withheld adjudication counts as a conviction under Florida law is irrelevant to the Rule 404(b) analysis. Rule 404(b) allows admission of "evidence of a crime, wrong, or other act" to show something other than propensity, such as "motive, opportunity, [or] intent." Fed. R. Evid. 404(b) (emphasis added). The withheld adjudications were plainly evidence of a prior bad act even if they were not convictions under Florida law. They were thus admissible under Rule 404(b).

## E.

Mr. Garcia says the District Court abused its discretion in striking the testimony of a defense witness who during cross-examination invoked her Fifth Amendment right against self-incrimination. Again here, there was no abuse of discretion.

If a witness invokes her right against self-incrimination during cross-examination, "all or part of that witness's direct testimony may be subject to a

16

motion to strike." Fountain v. United States, 384 F.2d 624, 628 (5th Cir. 1967).[3]

"Striking the testimony of a witness is a drastic remedy not lightly invoked."

McKneely, 69 F.3d at 1076. But it "may be the only appropriate remedy when

refusal to answer the questions of the cross-examiner frustrates the purpose of the

process." Lawson v. Murray, 837 F.2d 653, 656 (4th Cir. 1988).

The witness's invocation here left the government with no opportunity to test

the truth of her testimony. On direct examination, she said she never saw Mr.

Garcia sell drugs from the 29th Street house. But in the middle of cross-

examination, she invoked the Fifth Amendment in response to questions about

photographs of drugs in the 29th Street house. After finding counsel for the

witness, the District Court allowed the government to continue examining her

outside the jury's hearing. The witness continued to invoke the Fifth Amendment,

even in response to a question about whether she recognized the room where the

government found drugs and firearms. It was no abuse of discretion to strike the

witness's testimony in these circumstances.

## F.

Mr. Garcia argues the government made an improper golden rule argument in

closing. He says this necessitated a mistrial.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

During the closing argument, the government explained possession as follows: "[T]here are two types of possession; actual possession, the way [Mr. Garcia] possessed that AK-47 that the defendant used to possess, or constructive possession, the way you or I possess the things that are at home right now." This is not a golden rule argument. "A 'golden rule' argument asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." Grossman v. McDonough, 466 F.3d 1325, 1348 (11th Cir. 2006) (quotation marks omitted). The challenged argument did none of these things, nor did it otherwise appeal to the "passions or prejudices of the jurors." United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997). It was no abuse of discretion to deny a mistrial based on the government's definition of "possession" here.

## G.

Mr. Garcia also invokes the cumulative error doctrine. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Capers, 708 F.3d 1286, 1299 (11th Cir. 2013) (quotation marks and alteration omitted). Because Mr. Garcia has established no error, let alone cumulative error, this argument fails.

18

## V.

We now turn to Mr. Garcia's challenge to the sufficiency of the evidence supporting his two firearms convictions. We review de novo the sufficiency of the evidence, drawing all reasonable inferences and credibility evaluations in favor of the verdict. United States v. Frank, 599 F.3d 1221, 1233 (11th Cir. 2010). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." Id. (quotation marks omitted). We conclude sufficient evidence supports both firearms convictions.

Mr. Garcia was charged with two counts of violating 18 U.S.C. § 924(c), which prohibits knowingly possessing a firearm in furtherance of any drug trafficking crime for which he could be prosecuted in the courts of the United States. United States v. Woodward, 531 F.3d 1352, 1362 (11th Cir. 2008); see also 18 U.S.C. § 924(c). A firearm is possessed "in furtherance of" a drug trafficking crime when it "helped, furthered, promoted, or advanced the drug trafficking." Woodward, 531 F.3d at 1362 (quotation marks omitted). The in-furtherance inquiry considers the totality of the circumstances, including such factors as:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

19

United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002) (quotation marks omitted). The mere possession of a firearm during a drug trafficking crime will not suffice; there must be a "nexus" between the firearm and the drug trafficking activity. Id.

One of the § 924(c) counts charged Mr. Garcia with possessing firearms in furtherance of the crime of maintaining a drug-involved premises. One of the firearms charged under that count was the Glock .380 found in the backpack Mr. Garcia was carrying the day he was arrested. Officers saw Mr. Garcia carrying the backpack when he left the 29th Street house, and the Glock was loaded when Mr. Garcia was arrested with it. The backpack also contained drugs resembling those Mr. Garcia sold during the controlled buys. An agent testified that Mr. Garcia admitted after his arrest that he was on the way to sell drugs. The two other firearms charged in that count, a Glock 9 millimeter and an FN Five-Seven, were found right next to the drugs in the 29th Street house. Both were loaded.

The other § 924(c) count charged Mr. Garcia with using firearms in furtherance of the crime of possessing with intent to distribute Xanax. The two firearms charged in this count, an Uzi 9 millimeter and an AK-47, were both found loaded in Mr. Garcia's condo. The AK-47 was in plain view. The guns were both near a closet with bottles of Xanax inside.

According to an agent, Mr. Garcia admitted to possessing all the firearms law enforcement found.  The government also called an expert who testified that drug dealers frequently keep firearms near their drugs or drug proceeds for protection.

This evidence was sufficient for a reasonable jury to convict Mr. Garcia under this Court's precedent.  See United States v. Lopez-Garcia, 565 F.3d 1306, 1322 (11th Cir. 2009) (finding sufficient evidence for a § 924(c) conviction where the defendant was found in bed along with a gun, methamphetamine, and several hundred dollars cash); United States v. Mercer, 541 F.3d 1070, 1077 (11th Cir. 2008) (per curiam) (finding sufficient evidence for a § 924(c) conviction where a gun was found "in the same room where a jury could infer drugs were being packaged for sale and available in the immediate vicinity of items commonly used in a drug operation"); United States v. Suarez, 313 F.3d 1287, 1292–93 (11th Cir. 2002) (finding sufficient evidence for a § 924(c) conviction where the defendant kept multiple firearms throughout a house that was used to traffic cocaine into the United States); Timmons, 283 F.3d at 1253 (finding sufficient evidence for a § 924(c) conviction where two fully loaded firearms were near crack cocaine on a stove).

## VI.

We **AFFIRM** Mr. Garcia's convictions.

21