A98A1697. JACKSON v. THE STATE.
(512 SE2d 24)

SMITH, Judge.

Following a bench trial, Miquel Jackson was convicted of three counts of armed robbery. He appeals, raising as error the trial court's denial of his motion to suppress. "On review of a decision on a motion to suppress, we will construe the evidence most favorably to uphold the trial court's findings, and we will adopt the trial court's determinations on disputed facts and credibility if there is any evidence to support them. [Cit.]" *McFadden v. State*, 218 Ga. App. 327, 328 (461 SE2d 542) (1995). See also *Gray v. State*, 207 Ga. App. 648, 650 (2)

(428 SE2d 663) (1993). So construing the evidence presented during the hearing on Jackson's motion and at trial, we conclude that the trial court did not err in denying Jackson's motion to suppress the evidence seized as the fruit of his arrest.

The evidence showed the following facts with regard to Jackson's arrest. Detective Capus Long with the Atlanta Police Department was involved in the investigation of a series of armed robberies that occurred in three pawn shops on February 11, March 6, and March 7, 1995. He obtained, from victims and witnesses, detailed descriptions of the vehicle used during each of these robberies, as well as one of the perpetrators. The car was described to Long as an " '80s model" light blue Chevrolet Caprice with a dark blue vinyl top, having chrome around the windows and wheels with silver "hammer" or spiked rims. The car was videotaped during the March robberies, and one witness testified that one videotape showed "a full view of the car." Long testified that he watched these videotapes "over and over." Long also learned from witnesses that one suspect was a tall black male in his early twenties with a slim build, dark complexion, close cut hair, thick lips, and a thick, wide nose. This individual was further described as being about six feet tall and weighing one hundred eighty pounds. At least one of these videos captured the perpetrators of one of the March robberies entering the pawn shop.

While investigating the February and March robberies for which Jackson was ultimately charged, Long testified that he learned of a similar pawn shop armed robbery during which a victim's purse had been stolen. The purse was found shortly after the robbery under a bridge. Long drove to the neighborhood surrounding the bridge and saw a parked car matching the description of the one used during the February and March robberies. He stated that the car was "pretty much identical to the one that I had observed in the video." He observed the car from about "a block away" until two individuals entered it. One was a woman and the other a "tall, dark-skinned complexion black male." According to Long, the man appeared to "definitely match the description of the suspect given to me."

Long radioed for assistance and followed the car until it was stopped by a uniformed officer in a marked patrol car. He testified that he approached the car and identified himself and that Jackson was removed from the vehicle. After explaining to Jackson the investigatory purpose of the stop, because Jackson was a suspect in armed robberies and was considered to be "extremely violent," Long handcuffed Jackson for his own safety as well as that of other officers at the scene. While handcuffing Jackson, he noticed that Jackson was wearing a watch matching the description of a Rolex watch stolen from one of the pawn shops. Long testified that when he began handcuffing Jackson for safety reasons Jackson was not under arrest;

instead, he was being detained for the purpose of investigation. But when Long observed the watch on Jackson's wrist, he placed Jackson in a patrol car and considered him to be under arrest at that time.

Jackson filed a motion to suppress all evidence seized as the result of his arrest. After hearing evidence, the trial court denied the motion, concluding as follows: "I find there was a reasonable articulable suspicion to stop this vehicle. I don't think it was reasonable for the officer, Officer Long or whoever the officer was to handcuff the defendant at that time. I do think [there] was probable cause to arrest the defendant. I think that probable cause existed before the stop."

1. We find no merit in Jackson's contention that Long lacked articulable suspicion to stop him for investigatory purposes. An officer may conduct a brief investigative stop of a vehicle if that stop is "justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citations and punctuation omitted.) *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). In determining whether an investigatory stop met these requirements, "we examine whether the detaining officer had a particularized and objective basis for reasonably suspecting that the particular individual stopped was or had been engaged in criminal activity." (Footnote omitted.) *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997).

Applying these principles here, we conclude that Long's initial stop of Jackson was supported by reasonable and articulable suspicion that Jackson had been involved in criminal activity. Long "had more than a generalized description of the suspect he was seeking and the car he was driving." *Thomason*, supra. Long had viewed "over and over" videotapes that depicted the car, and he also relied on the detailed descriptions he received from witnesses to the robberies. In addition to knowing the make and colors of the car, he was familiar with distinguishing characteristics of the wheels and windows. Furthermore, in *Thomason*, the suspect's gender and race, in addition to a particularized description of his car, were apparently sufficient to afford an articulable suspicion to stop the suspect's car. But here, Long had been provided with more information than the officer in *Thomason* concerning the suspect's appearance; Long knew details concerning his race, gender, weight, height, hairstyle, complexion, and facial features. This case is therefore distinguished from *Vansant*, supra, in which the detaining officer stopped defendant based only on the fact that he was driving a white van. See *Thomason*, supra at 301. This detention was initiated upon a much more particularized description of the suspect vehicle, id., as well as a detailed description of Jackson. Long was therefore provided "with the requisite particularized basis to warrant the investigative stop of [Jack-

son]." (Footnote omitted.) Id.

2. Jackson also contends that the trial court erred in finding probable cause to stop his vehicle and to arrest him. In addressing this enumeration, we do not reach the issue of whether the trial court correctly ruled that probable cause to stop Jackson existed before the stop was effectuated. Only an articulable suspicion was necessary, and as discussed above, Long was authorized to conduct a brief investigatory stop of Jackson's vehicle. During Long's investigation, while handcuffing Jackson, he discovered a watch matching the description of one stolen during one of the robberies under investigation. Once Long discovered the stolen watch, he was authorized to arrest Jackson. See *Watson v. State*, 181 Ga. App. 512, 513-514 (3) (352 SE2d 828) (1987); *Evans v. State*, 162 Ga. App. 78 (290 SE2d 176) (1982).

Although the watch was discovered while Long was detaining Jackson by handcuffing him, this does not invalidate the arrest. The trial court denied the motion to suppress, but only after stating that handcuffing Jackson was unreasonable. We disagree with the trial court's statement. Under the limited circumstances of this case we do not find Long's actions unreasonable. As stated in *White v. State*, 208 Ga. App. 885, 888 (2) (432 SE2d 562) (1993), an officer conducting a stop "remains particularly vulnerable during such a stop precisely because a full custodial arrest has not been effected, [and] the officer must make quick decisions as to how to protect himself and others from possible danger. In determining whether an officer's conduct during an investigatory stop was proper, the inquiry is not whether the officer could validly have acted similarly but whether under the same circumstances a reasonable officer would have done so." (Citations and emphasis omitted.) See also *Pless v. State*, 218 Ga. App. 603, 605-606 (2) (462 SE2d 472) (1995). Jackson was a suspect in three armed robberies and was believed to be "extremely violent," and Long knew that the suspect "was going in shooting through the ceiling at people." Given these facts, we find Long's actions in handcuffing Jackson for safety purposes "reasonable under the circumstances, and therefore lawful as part of the investigatory stop." *White*, supra at 888 (2). We find no error in the trial court's conclusion that probable cause existed for Jackson's arrest, and we affirm the denial of his motion to suppress.

*Judgment affirmed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 3, 1999 —
RECONSIDERATION DENIED FEBRUARY 17, 1999.

*Richard D. Hobbs*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Jamie L. Mack, Assistant District Attorneys*, for appellee.