## A08A1604. GRAY v. THE STATE.
### (676 SE2d 36)

BERNES, Judge.

Following a bench trial, 16-year-old Andre Lamont Gray was convicted of armed robbery, burglary, aggravated assault, and possession of a firearm during the commission of a felony. Gray argues that the trial court erred in denying his motion to suppress because the evidence supporting his conviction was the product of an unlawful search and arrest. For the following reasons, we affirm.

When reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to uphold the findings and judgment of the trial court. *Megesi v. State*, 277 Ga. App. 855, 856 (627 SE2d 814) (2006). We will not disturb the trial court's findings on disputed facts and credibility issues if there is any evidence to support them. Id. at 857.

So viewed, the evidence shows that on August 1, 2006, police officers responded to a report of an armed robbery at the victim's home at approximately 3:45 a.m. The victim explained that the perpetrator entered his home in the early morning hours, awakened him by hitting him several times with a handgun, and robbed him at gunpoint. When the victim's sister heard the victim screaming and crying, she went into his room to see what was happening. The perpetrator then assaulted the victim's sister and demanded more money. The perpetrator taped together the arms of the victim and his sister before fleeing out of the back window with approximately $250 in cash and the victim's cell phone. The victim gave the officers a description of the perpetrator, including the clothing that he was wearing at the time of the crime.

The responding officers deduced that the perpetrator had entered the house by cutting and removing the screen on the back window and observed a pair of scissors laying on the grass next to the screen. The grass was moist with dew and the officers noticed a trail leading from the victim's window to a privacy fence separating the

victim's home from Gray's home. The footprints continued on the other side of the fence and led to a concrete pad at Gray's back door. The officers knocked on Gray's door. Gray's mother answered and allowed the officers to enter the home.

Upon entering the living room, the officers observed Gray lying on the couch, looking at them. The officers ordered Gray off of the couch, and he complied. As soon as Gray stood up, some of the officers placed Gray in handcuffs, while at the same time a different officer checked for weapons by looking underneath the cushions of the couch where Gray had been lying. The officer found $218 cash underneath one of the cushions. Gray claimed the money to be his and stated that his mother had given it to him; however, his mother stated that she had given him only $30 for a haircut.

Gray was arrested and transported to police headquarters. The investigating detective read Gray his juvenile *Miranda*[1] rights. Gray agreed to talk to the detective, and the interview was recorded by videotape. During his statement, Gray confessed that he had committed the crimes and further revealed the location of the clothing that he wore during the crimes' commission. Later that afternoon, police searched the residence and found Gray's clothing that matched the description given by the victims.

1. Gray argues that he was placed under de facto arrest upon being removed from the couch and handcuffed. Because the officers allegedly did not have probable cause to arrest him at that point, Gray claims that his arrest was unlawful under the Fourth Amendment, and that, as a result, the officer's search of the couch conducted incident to that arrest also was unlawful.

We are unpersuaded. Gray was not placed under de facto arrest upon initially being removed from the couch and handcuffed; rather, the record shows that Gray was placed in investigatory detention at that point for valid officer safety reasons.

While probable cause is required for a warrantless arrest, a person may be lawfully seized for purposes of a brief investigation when only a reasonable and articulable suspicion exists. What is intended to be an investigatory detention can be transformed into a de facto arrest by the means of detention employed. However, a law enforcement officer who detains a person for purposes of investigation should not be denied the opportunity to protect himself from attack by a hostile suspect and may lawfully detain the

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

person in a manner reasonably necessary to protect his personal safety and to maintain the status quo.

(Punctuation and footnotes omitted.) *Holsey v. State*, 271 Ga. 856, 861 (6) (524 SE2d 473) (1999). An "officer must make quick decisions as to how to protect himself and others from possible danger," *Jackson v. State*, 236 Ga. App. 492, 495 (2) (512 SE2d 24) (1999), and the officer is not required to risk his life in order to effectuate an investigatory detention. *Holsey*, 271 Ga. at 861 (6). Mindful of these principles, we have held that in sufficiently dangerous circumstances, officers may handcuff a suspect as part of an investigatory detention without transforming the detention into a de facto arrest. See *Jackson*, 236 Ga. App. at 495 (2).

We conclude that the circumstances of the present case were sufficiently dangerous to justify the officers in handcuffing Gray as part of his investigatory detention. The officers had articulable suspicion that Gray had committed the armed robbery earlier that morning because fresh footprints led from the victim's home directly to Gray's residence and Gray met the victim's physical description of the suspect in terms of race and gender. Furthermore, the armed robbery had been an extremely violent one in which the victim had been threatened and beaten badly with a firearm. Under these circumstances, the means of the detention employed by the officers were reasonable and did not transform the investigatory detention into an arrest. See *Jackson*, 236 Ga. App. at 495 (2).

2. Gray maintains that even if he was not in fact arrested until after the money was found beneath the couch, his motion to suppress still should have been granted. In this respect, Gray asserts that the officer's warrantless search of the couch while Gray was in investigative detention was unreasonable under the Fourth Amendment because it did not fall within one of the recognized exceptions to the warrant requirement. Because the search of the couch allegedly was illegal, Gray argues that his subsequent arrest likewise was illegal because it was made pursuant to the illegal search. We disagree.

As part of a search incident to a lawful arrest, officers may search the person arrested and the area in the immediate presence of that person. *Wright v. State*, 276 Ga. 454, 462 (6) (579 SE2d 214) (2003). See *Chimel v. California*, 395 U. S. 752, 762-763 (89 SC 2034, 23 LE2d 685) (1969). The same rule applies to a protective search for weapons conducted pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968): an officer may search the area in the immediate presence of a detainee for weapons, if the officer has a reasonable and articulable suspicion that the detainee is dangerous and may gain immediate control of a weapon. See *Newby v. State*, 178 Ga. App. 891, 892 (2) (345 SE2d 102) (1986). See *Michigan v. Long*,

463 U. S. 1032, 1049-1052 (III) (103 SC 3469, 77 LE2d 1201) (1983); *United States v. Bennett*, 555 F3d 962, 966 (11th Cir. 2009); *United States v. Medina*, 130 Fed. Appx. 862, 864 (9th Cir. 2005); *United States v. Johnson*, 637 F2d 532, 535 (8th Cir. 1980); *Hawaii v. Ortiz*, 683 P2d 822, 828-829 (II) (Haw. 1984); *Servis v. Virginia*, 371 SE2d 156, 160-161 (6), 162 (10) (Va. Ct. App. 1988).

Applying this rule to the case at hand, we conclude that as part of the protective search of Gray for weapons, the officer was entitled to lift the cushion of the couch to search for weapons potentially hidden there. As previously noted, the officers had a reasonable and articulable suspicion that Gray had been engaged in violent criminal activity and might be armed and dangerous. Furthermore, the couch was an area within the immediate control of Gray where he could easily have stashed a weapon following the robbery. Accordingly, it was reasonable under the Fourth Amendment for one of the officers to lift the cushions of the couch where Gray had been lying down at the same time as other officers removed Gray from the couch.[2] See *Bennett*, 555 F3d at 966 (officer's lifting of mattress was proper as part of *Terry* protective search for weapons); *United States v. Williams*, 454 F2d 1016, 1017 (D. C. Cir. 1971) (concluding that "lifting the mattress in search of a weapon was not only reasonable but necessary for protective purposes"). The trial court therefore did not err in denying Gray's motion to suppress on the asserted ground.

3. Gray next contends that his Fourth Amendment right to be free from unreasonable searches and seizures was violated because the officers did not have probable cause to arrest him following the discovery of the money under the couch cushion. Again, we disagree.

"Generally, probable cause for an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a belief by a man of reasonable caution that a crime has been committed." *Cornelius v. State*, 165 Ga. App. 794, 795 (302 SE2d 710) (1983). "When dealing with probable cause — as the name implies, we deal with probabilities — not certainty, and the quantum of proof necessary to establish probable cause is not that level which is necessary for proof of guilt in a trial." *Bradford v. State*, 149 Ga. App. 839, 841 (256 SE2d 84) (1979).

Here, as previously noted, the officers had observed fresh footprints leading from the victim's home directly to Gray's home. During the authorized protective sweep of the couch where Gray had

---

[2] To the extent that the testimony of other witnesses contradicted the testimony of the officer who conducted the search of the couch, "the trial court, and not this Court, resolves issues of credibility and conflicting evidence" in deciding a motion to suppress. *Davis v. State*, 232 Ga. App. 450 (1) (501 SE2d 241) (1998).

been lying, the officers discovered a large sum of money that was consistent with the approximate amount stolen during the crime. Significantly, Gray was unable to give a logical explanation for his possession of the money, and his statement conflicted with that of his mother. Based upon these circumstances, the officers had probable cause to arrest Gray. See *Smith v. State*, 262 Ga. App. 614, 624 (4) (585 SE2d 888) (2003) (officer's observation of stolen property in the defendant's possession provided sufficient probable cause for arrest). Cf. *Jackson v. State*, 217 Ga. App. 485, 487 (1) (458 SE2d 153) (1995) (evidence of the defendant's unexplained possession and concealment of goods stolen during the crime, which had occurred shortly before his arrest, was sufficient to establish the defendant's guilt).

4. Gray further argues that his confession should have been suppressed as the fruit of an illegal arrest. In light of our ruling that the arrest was lawful, as set forth in Division 3 above, the instant claim is without merit.

5. Lastly, Gray contends that his mother's consent to the search of the home following his arrest was not freely and voluntarily given because (a) it was the product of his illegal arrest and (b) the detective told Gray's mother that he was going to obtain a search warrant prior to gaining her consent.

(a) Again, in light of our ruling in Division 3 that Gray's arrest was lawful, his argument fails.

(b) Moreover, the evidence authorized the trial court's finding that Gray's mother's consent to the search of the home was freely and voluntarily given.

"[I]n a consent search, the burden is upon the state to demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances." (Citations and punctuation omitted.) *Code v. State*, 234 Ga. 90, 93 (III) (214 SE2d 873) (1975).

According to the investigating detective, he told Gray's mother that he needed to obtain a search warrant and that he wanted to arrange a convenient time when she would be present to allow the officers' entry. Gray's mother responded by offering to let the officers search the house at that moment without first obtaining a warrant. She explained, however, that she had to go to work and could not remain at the house if they began the search immediately. The detective informed Gray's mother that she needed to be present during the search in the event that she wanted to exercise her right to withdraw her consent at any time. Gray's mother, therefore, arranged to meet the detective at the house later that afternoon. When the detective arrived as planned, Gray's mother allowed him to perform the search. She did not withdraw her consent at any time.

YALE LAW LIBRARY

Based on this evidence, the trial court was authorized to find that Gray's mother voluntarily gave her consent in cooperation with the police efforts, and that she was not coerced or deceived. This conclusion is not altered by the fact that the detective told Gray's mother that he needed to obtain a search warrant prior to gaining her consent. It is true that when an officer represents to an accused that a warrant to search will be obtained if consent is refused, and the officer does not have probable cause to secure the warrant, then the accused's consent is invalid. See *Darby v. State*, 216 Ga. App. 781, 783 (2) (455 SE2d 850) (1995). See also *Bumper v. North Carolina*, 391 U. S. 543, 546-550 (II) (88 SC 1788, 20 LE2d 797) (1968) (consent to a search is not valid when the officer misrepresents that he has authority to search when in fact he does not). But, that did not happen in this case. Here, the detective had probable cause to obtain a search warrant and Gray's mother had not been misinformed when she sua sponte gave her consent to the search. The consent, therefore, was valid. Because Gray's mother had consented to the search, the detective was not required to obtain a search warrant thereafter, and his failure to do so did not amount to trickery or deceit. See *Code*, 234 Ga. at 93-96 (III); *Smith*, 262 Ga. App. at 621-623 (4); *Buckholts v. State*, 247 Ga. App. 697, 699-700 (2) (545 SE2d 99) (2001).

The trial judge was authorized to find that the consent was voluntary and was not the product of coercion, duress, or deceit. See *Code*, 234 Ga. at 95 (III); *Buckholts*, 247 Ga. App. at 699-700 (2). Any contradiction between the testimony of the detective and that of Gray's mother presented a credibility issue for the trial court's determination and affords no basis for reversal. See *Buckholts v. State*, 247 Ga. App. at 699-700 (2).

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 24, 2009 — 

*Robert Kenner, Jr.*, for appellant.
*Daniel J. Porter, District Attorney, Niria D. Baggett, Assistant District Attorney*, for appellee.