## A11A1373. ROGUE v. THE STATE.
(715 SE2d 814)

MIKELL, Judge.

Miguel Angel Rogue was charged by accusation with possession of cocaine after the contraband was found in his wallet during a traffic stop of the vehicle in which Rogue was a passenger. Rogue filed a motion to suppress, contending that his consent to the search of his wallet was invalid because it was preceded by an illegal pat-down of Rogue's person. Following a hearing at which both the arresting officer and Rogue testified, the trial court denied the motion. The court found that Rogue voluntarily consented to the officer's search of his wallet and that his consent was not the product of the officer's earlier illegal pat-down search of Rogue's person. Rogue was then convicted at a bench trial. On appeal, he challenges

the denial of his motion to suppress. Because there is evidentiary support for the trial court's findings, we affirm the trial court's judgment.

> At a hearing on a motion to suppress, the trial judge sits as the trier of fact. And Georgia law has long held that the trier of fact may believe or disbelieve all or any part of the testimony of any witness. Thus, on appellate review of a trial court's order on a motion to suppress evidence, we never second-guess the trial court's factual findings where they are based on testimonial evidence. We construe the evidence most favorably to the upholding of the trial court's findings and judgment and affirm unless the court has committed an error of law.[1]

Even when only one witness testifies at the suppression hearing and his testimony is not contradicted, the evidence is nonetheless not "uncontroverted," for the reasons stated above.[2] Only when the evidence is stipulated is our review de novo.

So construed, the evidence adduced at the suppression hearing shows that Rogue was a passenger in a vehicle that Officer Adam G. Bell of the Gwinnett County Police Department stopped for a window tint violation. Bell asked for and obtained the driver's consent to a search of the vehicle, and he then asked Rogue to step out of the car so that Bell could conduct the search. Rogue got out of the car, and Bell asked him if he had any weapons or contraband on his person. Rogue answered no. Although Rogue seemed nervous and would not make eye contact with Bell, the trial court found that no evidence suggested that Rogue possessed any weapons. Nonetheless, Bell acted in accordance with his standard practice and proceeded to pat Rogue down for weapons to make sure that he was not armed and presented no threat to the officer's safety. Bell then identified himself and asked Rogue for identification. Bell testified that Rogue "pulled out his wallet and started thumbing through his credit cards and . . . items that he had in his wallet. He appeared to be extremely nervous. His carotid [artery] in his neck started pulsating a little bit. He apparently had a hard time locating his ID." Bell then asked Rogue if he could help him look for his ID. In response, Rogue said, "Here," and handed Bell the wallet. Bell testified that he did not

---

[1] (Punctuation and footnotes omitted.) *State v. Rowell*, 299 Ga. App. 238-239 (682 SE2d 343) (2009).

[2] *Robinson v. State*, 295 Ga. App. 136, 139 (670 SE2d 837) (2008) (Mikell, J., concurring specially); *State v. Ellison*, 271 Ga. App. 898, 901 (3) (a) (611 SE2d 129) (2005). See also *Tate v. State*, 264 Ga. 53, 56 (3), n. 5 (440 SE2d 646) (1994).

order Rogue by word or gesture to hand over his wallet. As Bell looked through the wallet for identification, he found a clear plastic bag containing a white powdery substance, which, based on Bell's training and experience, appeared to him to be cocaine.

Rogue argues that Bell's search of the wallet was not based on valid consent, because the search followed almost immediately after an illegal frisk of Rogue's person; and that therefore the cocaine evidence found in the wallet should have been suppressed. The trial court found otherwise, and the evidence adduced at the hearing supports the trial court's ruling.

"There are at least three levels of police-citizen encounters: verbal communications that involve no coercion or detention; brief 'stops' or 'seizures' that must be accompanied by a reasonable suspicion; and 'arrests,' which can be supported only by probable cause."[3] In this case, the officer's observation of the vehicle's improperly tinted windows provided the reasonable suspicion necessary to support the traffic stop.[4] Further, during such a valid traffic stop, Bell could properly request consent to search the vehicle and could properly ask the occupants to exit the vehicle and provide identification.[5]

As to the officer's subsequent pat-down of Rogue, the evidence supports the trial court's conclusion that Bell did not have a proper basis to frisk Rogue after asking him to exit the automobile. In order "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous, and . . . this requirement applies to passengers in cars legally stopped."[6] Bell testified that for his safety, he routinely patted down the passenger when the driver consented to a search of his automobile. This testimony, because it was based on general policy and not "on information specific to the person frisked"[7] was "insufficient to establish that [Bell] harbored a reasonable suspicion that [Rogue] was armed and dangerous or otherwise posed a threat to officer

---

[3] (Punctuation and footnote omitted.) *Lucas v. State*, 284 Ga. App. 450, 452 (644 SE2d 302) (2007).

[4] See *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006).

[5] See *Salmeron v. State*, 280 Ga. 735, 736-737 (1) (632 SE2d 645) (2006) (during valid traffic stop, officer may seek consent to search vehicle, ask occupants to get out of car, and request to examine driver's license). Accord *Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) (whole court) ("police may lawfully ask questions unrelated to the purpose of a valid traffic stop, so long as the questioning does not unreasonably prolong the detention") (citations omitted); *Hayes v. State*, 292 Ga. App. 724, 730 (2) (e) (665 SE2d 422) (2008) ("Asking the driver to step out of the vehicle does not unduly prolong the detention") (footnote omitted).

[6] (Citation and punctuation omitted.) *Molina v. State*, 304 Ga. App. 93, 96 (695 SE2d 656) (2010).

[7] Id. at 98.

safety."[8]

Rogue contends that his subsequent consent to Bell's examination of his wallet was not voluntary because of this unlawful pat-down. However, the contraband was not uncovered during the unlawful pat-down. Under our decision in *State v. Baker*,[9] the prior unlawful pat-down does not operate to invalidate Rogue's later consent to the search of his wallet. In *Baker*, as in the case at bar, the arresting officer's pat-down of the defendant, a student, was unlawful because no evidence supported a finding that the student was armed or dangerous;[10] thus, "if the police had found evidence as a result of the [illegal] pat-down, the trial court would have been authorized to suppress that evidence."[11] After the pat-down, however, the officer asked the student if he had any drugs on him; he responded "no" and "invited [the officer] to check him to make sure that he had no drugs on him," whereupon the officer searched him and found marijuana in his pocket.[12] As in the case at bar, the contraband in *Baker* was not discovered during the unlawful pat-down, but during a subsequent search pursuant to consent; and "if the subsequent search was pursuant to a voluntary consent which was not a product of the illegal detention, the taint of that illegal detention would not require suppression of the evidence."[13]

"When the state relies on a consent search, it bears the burden of showing that the consent was voluntarily given, and not the result of duress or coercion, either express or implied."[14] In *Baker*, we remanded the case to the trial court to address the issue of whether the defendant's consent in that case was voluntarily obtained.[15] Such a remand is not necessary in the case at bar, however, because in its ruling the trial court addressed the voluntariness of Rogue's consent. Whether consent is voluntarily given is a question of fact for the trial court to determine from all the circumstances.[16]

The evidence in the record supports the trial court's conclusion that Rogue voluntarily consented to the officer's search of his wallet.

---

[8] (Citations omitted.) Id.

[9] 261 Ga. App. 258 (582 SE2d 133) (2003).

[10] Id. at 259-260.

[11] Id. at 260.

[12] Id. at 259.

[13] (Punctuation and footnote omitted.) Id. at 260. Compare *State v. Lanes*, 287 Ga. App. 311, 313 (651 SE2d 456) (2007) (trial court's grant of motion to suppress upheld where initial detention of defendant was invalid and trial court found that consent to search was result of that invalid detention).

[14] (Punctuation and footnote omitted.) *Silverio v. State*, 306 Ga. App. 438, 446 (3) (702 SE2d 717) (2010).

[15] *Baker*, supra.

[16] *Gray v. State*, 296 Ga. App. 878, 882 (5) (b) (676 SE2d 36) (2009).

Bell testified that after the pat-down, Rogue was free to leave at any time. According to Bell's testimony, which was credited by the trial court, Rogue did not suffer from a language barrier and he understood Bell's questions; in particular, he understood that Bell asked for his ID. The trial court found that when Rogue had trouble finding his ID, he handed his wallet to the officer after Bell offered to help. Thus, the trial court did not err in denying Rogue's motion to suppress evidence.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 16, 2011.

*Campano & Sperling, Jean C. Sperling-Cavallero, Whitmer & Law, George H. Law III*, for appellant.

*Daniel J. Porter, District Attorney, Christa L. Kirk, Assistant District Attorney*, for appellee.