**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 4, 2013

# In the Court of Appeals of Georgia

A13A0651. THE STATE v. CARR.

BRANCH, Judge.

After a car in which he was a passenger was stopped by Fulton County police officers, Kentavius Carr was arrested and subsequently indicted on a single count of possession of a firearm by a convicted felon.[1] Carr moved to suppress the evidence seized during a police search of the automobile in which he had been riding, arguing that the search resulted from his illegal detention or arrest. The trial court granted that motion and the State now appeals from that order. We find no error and affirm.

In reviewing a trial court's ruling on a motion to suppress, "we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless

---

[1] OCGA § 16-11-131.

clearly erroneous." *State v. Able*, ___ Ga. App. ___ (Case No. A13A0653, decided April 24, 2013) (footnote and punctuation omitted). We review de novo, however, the trial court's application of the law to the facts. Id.

Viewed in the light most favorable to the trial court's judgment, the record shows that on March 30, 2012, Jhakeva Smith placed a 911 call to report an act of domestic violence committed against her by her boyfriend. Smith, who remained on the phone with dispatch as she waited for police, gave the 911 operator a description of the suspect and the clothes he was wearing. Officers Lance Wood and Tracy Marks of the Fulton County Police Department responded to the call.[2] As the officers pulled into the apartment complex where Smith lived, dispatch informed them that the victim had reported the suspect was riding in a blue Impala. The officers saw a blue Impala driving towards them and, based on the information they had just received, they stopped the vehicle.

There were two men in the Impala, with Carr being the passenger. Wood acknowledged that he had been given a description of the suspect and his clothing, and that neither man in the car "fit the description of the suspect [police] were looking

---

[2] Officer Wood testified at the motion to suppress hearing; Officer Marks did not.

for." The officers nevertheless asked Carr and the driver of the Impala for their identification, and each man produced a driver's license. Wood then moved to an area behind the Impala where he ran a check on both licenses; each license eventually returned with no outstanding warrants.

While Wood was running the license check, Marks opened the passenger door of the Impala. When she did so, the driver of the Impala exited the car and fled from the scene. Wood chased the driver but was unable to apprehend him. By the time Wood returned to the Impala, Marks had removed Carr from the automobile, handcuffed him, and placed him in the back of the patrol car. Marks informed Wood that she had found two guns in the Impala, one in the pocket on the driver's door and one in the pocket on the passenger's door. The officers ran the identification numbers on the weapons and learned that the gun found on the passenger side of the car was stolen. At that point, Carr was formally placed under arrest for theft by receiving.

Smith, who witnessed the encounter between Carr and the police, testified at the motion to suppress hearing. She stated that she was outside in the parking lot of the apartment complex during the time she was on the phone with 911. She saw the blue Impala, thought her boyfriend had gotten into the vehicle, and reported that fact to the 911 operator. Shortly thereafter, however, the blue Impala pulled up next to Smith and

3

she saw that her boyfriend was not in the car. According to Smith, she also relayed this information to dispatch.

Smith saw the police arrive at the apartment complex and stop the Impala, and she went to the scene of the traffic stop. Smith testified that as soon as the driver fled the scene with Wood in pursuit, Marks drew her gun, pulled Carr out of the Impala and onto the ground, telling him she would shoot him in the head if he moved. The officer then handcuffed Carr and placed him in the back of the patrol vehicle. According to Smith, Marks seized the guns from the Impala after she had removed Carr from the vehicle. Smith also testified that she tried to tell the police that the suspect was not in the Impala, but the officers "didn't want to talk." The officers never took a statement from Smith and she had to place a second 911 call to file a police report with respect to the domestic violence incident.

Following the hearing, the trial court granted Carr's motion to suppress the evidence seized during the police search of the Impala. The court found that the officers had a reasonable basis to stop the automobile and conduct a brief investigative inquiry. Noting that Carr did not match the description of the suspect and had cooperated fully with police, and that there were no outstanding warrants on him, the

4

court further found that police unjustifiably escalated their encounter with Carr into an unconstitutional arrest. The State now appeals from that ruling.

In its brief, the State argues that the trial court erred in finding that Marks's conduct with respect to Carr constituted an unlawful arrest, because Marks was acting in the interest of officer safety and, given the circumstances, her conduct was reasonable. This argument is without merit.

It is well established that police officers may conduct a brief stop of a vehicle and its occupants for the purpose of investigating suspected criminal activity, provided that the officers' suspicions are based on specific information.[3] See *Taylor v. State*, 296 Ga. App. 481, 482-483 (675 SE2d 504) (2009). Such a stop must be limited in time to that which is reasonably necessary to investigate the allegation that led to the stop, *Bennett v. State*, 285 Ga. App. 796, 798 (648 SE2d 126) (2007), and a detention that exceeds that time constitutes a de facto arrest. *Grandberry v. State*, 289 Ga. App. 534, 539 (2) (658 SE2d 161) (2008). Similarly, an investigatory stop escalates into a

---

[3] "There are three tiers of police-citizen encounters . . . . First-tier encounters are consensual communications between police and citizens and involve no coercion or detention; second-tier encounters, which must be supported by reasonable suspicion, are brief stops done for the purpose of investigating suspected criminal activity; and third-tier encounters are actual or de facto arrests and, accordingly, must be supported by probable cause." *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009) (citations omitted).

de facto arrest whenever the person stopped is "restrained to a degree associated with a formal arrest . . . ."(Citation and punctuation omitted.) *Suluki v. State*, 302 Ga. App. 735, 738 (1) (691 SE2d 626) (2010). For such an arrest to be constitutional, it must be based on probable cause , i.e., police must possess knowledge of objective facts and circumstances that would lead a reasonable officer to believe that the suspect has committed or is committing a crime. (Citation and punctuation omitted.) *Minor v. State*, 298 Ga. App. 391, 396 (1) (b) (680 SE2d 459) (2009).

On appeal, neither party disputes that, based upon the information available to them, the police were justified in stopping the Impala and questioning its occupants. Given this fact, the State points to our case law holding that during an investigatory traffic stop officers may take reasonable steps to insure their own safety. See *Rogue v. State*, 311 Ga. App. 421, 423-424 (715 SE2d 814) (2011) (to protect himself, an officer may frisk the occupant of an automobile that is the subject of an investigatory stop, provided he has a reasonable belief "that the person . . . is armed and dangerous") (punctuation and footnote omitted.) *Gray v. State*, 296 Ga. App. 878, 880 (1) (676 SE2d 36) (2009) ("in sufficiently dangerous circumstances, officers may handcuff a suspect as part of an investigatory detention without transforming the detention into a de facto arrest") (citation omitted). The State argues that by

6

handcuffing Carr, Banks was acting only to protect officer safety and that this conduct must therefore be viewed as part of the constitutional investigatory stop, rather than an arrest. We disagree.

First, we note that even assuming the State's argument about the officers' safety had merit in this case, it does not address the subject of the motion to suppress, which was the illegal search of the Impala. Marks' concerns for her safety should have dissipated once she had Carr handcuffed and in the back of the patrol vehicle. In other words, we fail to see how her subsequent search of the Impala, during which she found the weapon at issue, was motivated by concern for officer safety.

Due to Marks's failure to testify, however, there is no evidence in the record that she had concern for her safety. Accordingly, we find that, under the circumstances of this case and the evidence contained in the record, Marks's decision to place Carr in handcuffs resulted in an unconstitutional seizure of his person. When analyzing whether a defendant has been seized in violation of the Fourth Amendment, "the touchstone of our inquiry is the reasonableness of the officer's conduct, which is measured in objective terms by examining the totality of the circumstances."(Footnote omitted.) *Young v. State*, 310 Ga. App. 270, 273 (712 SE2d 652) (2011). See also *Bennett*, supra. Thus, in *Gray*, supra, we held that police acted reasonably in

7

handcuffing a suspect whom they were investigating as the likely perpetrator of an armed robbery. Id at 880 (1). The information known to the police at the time they encountered the suspect included the fact that footprints led from the crime scene to the suspect's home; the suspect met the physical description of the perpetrator; and "the armed robbery had been an extremely violent one in which the victim had been threatened and beaten badly with a firearm." Id. We concluded that "*[u]nder these circumstances*, the means of the detention employed by the officers were reasonable and did not transform the investigatory detention into an arrest." Id. Similarly, in *Jackson v. State*, 236 Ga. App. 492 (512 SE2d 24) (1999), we held that an officer's decision to handcuff an armed robbery suspect, who was detained for questioning following a traffic stop, was reasonable under the circumstances. We explained:

> Jackson was a suspect in three armed robberies and was believed to be 'extremely violent,' and [the officer] knew that the suspect 'was going in shooting through the ceiling at people.' *Given these facts*, we find [the officer's] actions in handcuffing Jackson for safety purposes *'reasonable under the circumstances*, and therefore lawful as part of the investigatory stop.'

Id. at 495 (2). (Citation omitted; emphasis supplied.)

Unlike the officers in *Gray* and *Jones*, Marks did not testify at the motion to suppress hearing and we therefore have no testimony as to her motives in restraining Carr. And the evidence that was presented failed to demonstrate that either Wood or Marks had a reasonable basis for believing that Carr was armed, dangerous, or otherwise a threat to the officers' personal safety. There was no report that the perpetrator in the domestic violence incident was armed; Carr had cooperated fully with police; and Carr had no outstanding warrants. Morever, Carr did not match the description of the suspect given to police and the citizen who had telephoned for police assistance was on the scene, and she attempted to tell officers that neither of the men in the Impala was her assailant. Given the evidence, we cannot say that the trial court erred in holding that Marks's decision to remove Carr from the Impala forcibly, handcuff him, and place him in the patrol car escalated the investigatory stop into a custodial arrest. See *Suluki*, supra (holding that officers seeking to question an individual in conjunction with a murder investigation effected an unconstitutional arrest, rather than an investigatory detention, when they seized the man, placed him face down on the ground, and handcuffed him before questioning him; "it is the reasonable belief of an ordinary person under such circumstances, and not the subjective belief or intent of the officer, that determines whether an arrest has been

effected") (citation and punctuation omitted.) And because there is insufficient evidence to establish that the officers had probable cause to arrest Carr, the arrest and, therefore, the search of the Impala incident to that arrest were unconstitutional. Accordingly, the trial court did not err in granting the motion to suppress. See *Minor*, supra at 396 (1) (b) ("[t]he existence of probable cause must be measured by current knowledge, i.e., at the moment the arrest is made and not in hindsight") (citation and punctuation omitted).

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*