**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 23, 2020**

# In the Court of Appeals of Georgia

A20A1212, A20A1213. THE STATE v. BIZZARD; and vice versa.

MERCIER, Judge.

Kasib Bizzard was indicted on charges of possession of a controlled substance with intent to distribute, possession of a firearm during the commission of a felony, theft by receiving stolen property (the firearm), and possession of a firearm by a convicted felon during the commission of a crime. He moved to suppress evidence of drugs and a firearm found on or near him during his arrest, contending that officers lacked reasonable, articulable suspicion to stop him and that they arrested him without probable cause. The State countered that officers had reasonable suspicion to temporarily detain Bizzard, such that his attempt to walk away and resist detention gave them probable cause to arrest him for obstruction.

The trial court granted the motion to suppress the drug evidence, but denied the motion as to the gun evidence. In Case No. A20A1212, the State appeals the suppression of the drug evidence.[1] Bizzard cross-appeals in Case No. A20A1213, challenging the trial court's refusal to suppress the gun evidence. For reasons that follow, we affirm the judgment in Case No. A20A1212, and we reverse the judgment in Case No. A20A1213.

"In reviewing a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo." *Kennebrew v. State*, 304 Ga. 406, 409 (819 SE2d 37) (2018); see also *State v. Underwood*, 283 Ga. 498, 500 (661 SE2d 529) (2008).

At a hearing on the motion to suppress, the State called only one witness, a police officer ("agent") with the Savannah Police Department. The agent was part of a task force formed in response to a rise in violent crimes in the city. On December 29, 2018, he was working undercover, assigned to look for possible crimes near two adjacent houses on Collins Street, where there had been multiple reported incidents of narcotics and other criminal activity over the previous two years. The agent heard

---

[1] See OCGA § 5-7-1 (a) (4), permitting the State to file a direct appeal from an order suppressing evidence.

over the radio that a crowd of people had gathered in front of the specified addresses, and he was asked to drive by the area.

When the agent approached in an unmarked vehicle, he noticed a man standing in the middle of Collins Street, "looking up and down the street, which usually indicates a countersurveillance[.]" The agent also saw about eight to ten people in a crowd. One person was leaning over, "which is usually like they were rolling dice." The agent added that "[p]art of the crowd was around that area" and, based on his training and experience, a group of people rolling dice against a curb is "usually a sign of someone gambling . . . . [i]llegally." About half of the group was standing in the road. The agent reported his observations by radio to the task force, drove past the group, and parked a short distance away.

The agent heard over the radio that the plan was for officers driving marked vehicles to approach the crowd, activate their vehicles' blue lights, and detain the people who were on the scene. The agent drove back to the area and, upon arriving, saw multiple marked vehicles. He also observed Bizzard being "picked up" and "assisted off the ground" by police officers, who then escorted Bizzard to a police car. The agent saw a firearm in "practically the same spot" where Bizzard "was taken off the ground." The agent "came up and detained [Bizzard] on his left" arm, while

3

another officer "had him on one side." The other officer searched Bizzard, finding a pill bottle containing heroin in Bizzard's pocket. The agent noted that while the evidence was being recovered from Bizzard, he was "being disorderly."

Asked where Bizzard had been standing in the group when the agent first drove through, he testified that he "couldn't pick out an individual," as "[i]t was just a group of people down there." He added that Bizzard was not the person he saw standing in the middle of the street, and he did not identify Bizzard as the person he saw possibly rolling dice. The agent further testified that he did not see Bizzard walking away from police vehicles. The State introduced video footage from the body camera of another officer who arrived on the scene. That footage did not show any persons fleeing, and it depicted no events involving Bizzard prior to him being held down or lifted off the ground. During this encounter, Bizzard asserted that he "didn't do anything" and "was just walking up the street."

The trial court issued two orders on the motion to suppress. In the first order, it found, based on the totality of circumstances (namely, the history of the property, the individual standing in the intersection, and the crowd gathered around an individual who appeared to be rolling dice), that the officers had reasonable, articulable suspicion of criminal activity that justified a brief second-tier stop of "the

4

group." The court added that the second-tier encounter had risen to a third-tier encounter or full arrest by the time the agent witnessed officers picking Bizzard up off the ground, after which they found the drugs and gun. The trial court did not address whether probable cause authorized the arrest, instead asking the parties to brief the matter. It found, however, that Bizzard lacked standing to contest the admissibility of the firearm seized in the encounter because he had stated at the scene that the gun was not his.

Through subsequent briefing, the State argued that Bizzard's effort to flee from the second tier stop and resist detention "constituted the offense of [o]bstruction providing [p]robable [c]ause for a tier three arrest and a search incident to that arrest." The trial court rejected this claim in its second order, finding that "while probable cause may have indeed existed for [Bizzard's] arrest [for obstruction], the evidence was not presented." The court noted that the testifying agent did not arrive until Bizzard was being held on the ground, and the agent offered no testimony regarding Bizzard's encounter with police prior to that time. Concluding that the State had not demonstrated probable cause for the arrest, the trial court suppressed the drug evidence seized from Bizzard's pocket.

1. The State contends that the trial court erred by applying a standard of "beyond a reasonable doubt," rather than "probable cause," in deciding whether Bizzard's arrest for obstruction was lawful. This contention is without merit.

> The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. When a defendant raises a Fourth Amendment claim, we must be mindful that there are three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

*Lewis v. State*, 307 Ga. App. 593, 594 (705 SE2d 693) (2011) (citations and punctuation omitted). The State has the burden of proving the lawfulness of a search and seizure. OCGA § 17-5-30 (b).

In its order, the trial court did not state that it was applying a "beyond a reasonable doubt" standard to the motion to suppress. Rather, it concluded that the State failed to present evidence that probable cause existed to arrest Bizzard. The proper standard was applied.

Moreover, the record supports the trial court's conclusion. The concept of probable cause requires that police "possess knowledge of objective facts and circumstances that would lead a reasonable officer to believe that the suspect has committed or is committing a crime." *State v. Carr*, 322 Ga. App. 132, 134-135 (744 SE2d 341) (2013). The State claims that probable cause existed because Bizzard resisted officers who were detaining him during the second tier stop. See OCGA § 16-10-24 (a) (the crime of obstruction results when a person "knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties[.]"). A key issue, however, is *when* Bizzard was arrested. In analyzing the timing of an arrest, a court considers "whether the individual was formally arrested or restrained to a degree associated with a formal arrest[.]" *Galindo-Eriza v. State*, 306 Ga. App. 19, 23-24 (1) (701 SE2d 516) (2010) (citation and punctuation omitted). The question "is whether a reasonable person in the suspect's position would have thought the detention would not be temporary." Id. at 24 (1) (citation and punctuation omitted).

When the testifying agent arrived on the scene, Bizzard was being restrained by officers and moved to a police car. The trial court determined that Bizzard was already under arrest for obstruction at that point, and we find no error. A reasonable

person in Bizzard's position would have thought that the detention was not temporary. See *Galindo-Eriza*, supra. The State, therefore, must demonstrate that probable cause to arrest existed *before* the agent arrived. But other than Bizzard's statement that he was "just walking up the street," the record is devoid of any facts regarding Bizzard's pre-arrest conduct or the officers' interactions with him. The video does not shed light on this inquiry, and no one other than the agent testified. We simply do not know what occurred before the agent's arrival. It is unclear what Bizzard was doing when officers first entered the area, how Bizzard responded to the officers, or whether those officers had reasonable grounds to believe that Bizzard was engaging in obstruction.

On appeal, the State notes that the testifying agent observed Bizzard struggling with officerss after the agent arrived. This post-arrest conduct, however, cannot support a finding of obstruction where the initial arrest lacked probable cause. See *Bacon v. State*, 347 Ga. App. 689, 690 (820 SE2d 503) (2018) ("A police officer is not discharging his lawful duties when he is making an unlawful arrest, and a person who resists an unlawful arrest does not hinder the officer in the lawful discharge of his official duties."). Accordingly, Bizzard's effort to resist the initial arrest could not, itself, give police officers probable cause to arrest him. See *Ewumi v. State*, 315 Ga.

8

App. 656, 663 (1) (b) (727 SE2d 257) (2012) (officer lacked probable cause to arrest defendant for battery allegedly committed when defendant resisted unlawful arrest; "because that arrest was unlawful, [defendant] was justified in resisting the attempted arrest"); *State v. Dukes*, 279 Ga. App. 247, 251 (630 SE2d 847) (2006) (officers lacked probable cause to arrest defendant for obstruction based upon flight where defendant had the right to flee from first tier encounter).

Given the record before us, we must conclude that the State failed to demonstrate probable cause for Bizzard's arrest. And because of this failure, we must find that the search of Bizzard's person following the arrest was unlawful. See *Dukes*, supra. Accordingly, the trial court properly suppressed the evidence discovered during the search. See *Ewumi*, supra at 664 (1) (b); *Carr*, supra at 136-137; *Dukes*, supra.

2. In a separate claim of error, the State contends that the evidence "satisfies the higher [reasonable doubt] standard applied by" the trial court. As noted above, the trial court did not apply a "beyond a reasonable doubt standard"; it properly analyzed whether probable cause existed for Bizzard's arrest. And we agree with the trial court's conclusion that no probable cause existed here. The judgment in Case No. A20A1212 is affirmed.

9

3. Bizzard contends that the trial court improperly denied his motion to suppress evidence of the firearm based on standing. We agree.

"The indirect fruits of an illegal search or arrest should be suppressed when they bear a significantly close relationship to the underlying illegality." *State v. Gravitt*, 289 Ga. App. 868, 871 (2) (b) (658 SE2d 424) (2008) (citation and punctuation omitted). Even "assuming arguendo [Bizzard] had lacked standing to contest the legality of the seizure, he nevertheless was subjected to an unlawful arrest which resulted in and tainted the seizure of the [firearm], and the sanction in such circumstances . . . is that of evidence suppression." *State v. Brown*, 201 Ga. App. 771, 773 (3) (412 SE2d 583) (1991) (emphasis and punctuation omitted). The trial court erred by not suppressing evidence of the firearm found during an arrest that, according to the record before us, was not supported by probable cause.

*Judgment affirmed in Case No. A20A1212 and reversed in Case No. A20A1213. Miller, P. J., and Coomer, J., concur*.