**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 15, 2022**

# In the Court of Appeals of Georgia

A22A0255. WILLIAMS v. THE STATE.

RICKMAN, Chief Judge.

The sole question before the Court in this discretionary appeal is whether appellant Quintez D. Williams, a passenger in a vehicle from which physical evidence was seized following a stop, was temporarily detained or de facto arrested without lawful authority when he was removed from the vehicle at gun point and immediately placed into handcuffs. We conclude that Williams was lawfully detained by the investigating officers and, therefore, affirm the trial court's denial of his motion to suppress.

When reviewing the grant or denial of a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment. An appellate

court also generally must limit its consideration of the disputed facts to those expressly found by the trial court.

(Citation and punctuation omitted.) *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018); see also *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015). When the motion to suppress challenges the admissibility of evidence seized after a warrantless search, the State has the burden of proving that the search was lawful. See *State v. Hammond*, 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012).

So construed, the facts as taken from the trial court's order are as follows: In January 2019, at approximately 1:34 a.m., an officer from the Douglasville Police Department was patrolling on I-20 East when he received a stolen tag notification from his vehicle's automated license plate reader. The alert came as three vehicles, seemingly traveling closely together, passed the officer while traveling in the center lane. The three vehicles, in order from back to front, were a red Kia Forte, a black Dodge Journey, and blue Volkswagen Passat. As the officer approached the vehicles in an attempt to determine which one displayed the stolen tag, all three slowed from 70 to 51 miles per hour and switched from the middle lane into the far left lane. That observation, in addition to the fact that all three vehicles displayed Alabama tags, led

the officer to believe, based on his training and experience, that they were traveling together in tandem.

The officer determined that the stolen license plate was on the Dodge and after verifying its status through Georgia Crime Information Center, he learned that the tag actually belonged to a Nissan. As he prepared to initiate a stop of that vehicle, he requested backup from dispatch. The officer also broadcasted the tag numbers and a description of all three vehicles, and explained his observations that they were likely traveling together.

When backup arrived, the officer dropped behind the Dodge and attempted to initiate a traffic stop. The other two vehicles continued unimpeded. The Dodge turned on its turn signal and began to pull into the emergency lane as though it was going to pull over, but then accelerated to 100 miles per hour and fled. A high-speed chase ensued. The officer continued to keep dispatch apprised of the location of the Dodge throughout the chase. After several unsuccessful PIT maneuvers, the vehicle crashed and its three occupants fled on foot. Two AK-47 assault rifles could be seen in plain view through the windows of the Dodge.

Additional law enforcement officers were dispatched to set up a perimeter to look for the fleeing suspects. The responding officers were made aware that weapons

had been found in the abandoned vehicle. Eventually, the driver of the Dodge was apprehended, but its two passengers remained at large.

While in the process of setting up a perimeter to search for the fleeing passengers, a second officer from the Douglasville Police Department observed a Volkswagon Passat with Alabama tags that matched the description of that which had been driving in tandem with the Dodge. The vehicle was driving slowly through a subdivision near the area of the Dodge's crash site, and the officer suspected that it may have been looking to aid the fleeing passengers. The officer called in the license plate of the Volkswagen in order to confirm that it was, in fact, one of the original three vehicles. Aware that the Volkswagen contained "multiple occupants" but unsure of how many, and aware that firearms had been discovered in the abandoned Dodge, the officer followed the vehicle but did not immediately initiate a stop. Instead, she requested backup.

The Volkswagen was ultimately stopped by several deputies from the Douglas County Sheriff's Office. The occupants, including Williams, were ordered out of the vehicle at gunpoint and placed into handcuffs while law enforcement officers sought to identify them and investigate their possible connection to the occupants of the

Dodge. Marijuana, firearms, and large amounts of cash were discovered inside the Volkswagen.

Williams was subsequently arrested and charged with several violations of the Street Gang Terrorism and Prevention Act,[1] several counts of theft by receiving stolen property,[2] several counts of possession of a firearm during the commission of a felony,[3] and a single count of possession of marijuana with intent to distribute.[4] He filed a motion to suppress the physical evidence seized from the Volkswagen on the grounds that the car was unlawfully stopped and searched, and that he was de facto arrested without lawful authority in violation of the Fourth Amendment of the United States Constitution.[5]

The trial court denied Williams's motion upon concluding that the officers, in their collective knowledge,[6] had a reasonable, articulable suspicion that the

---

[1] See OCGA § 16-15-4 (a); 16-15-3 (1) (J).

[2] See OCGA § 16-8-7 (a).

[3] See OCGA § 16-11-106 (b).

[4] See OCGA § 16-13-30 (j) (1).

[5] See U. S. Const. Amend. IV; see also Ga. Const. Art. 1, Sec. 1, ¶ XIII.

[6] "[R]easonable suspicion may exist based on the collective knowledge of the police when there is reliable communication between the officer supplying the

5

individuals in the Volkswagen were engaged in or were about to be engaged in criminal activity. The objective facts upon which the trial court relied included: the information communicated by the first officer, including the tag numbers and descriptions of the three vehicles and the officer's observations that the three vehicles appeared to be driving in tandem by slowing down and switching lanes before he activated his lights; the flight of the occupants from the Dodge; the presence of two AK-47 rifles in the abandoned vehicle; the second officer's verification that the Volkswagen was one of the original three vehicles observed driving in tandem with the Dodge; the Volkswagen's departure from I-20 and its subsequent appearance in a neighborhood near the site where the Dodge had crashed and its had occupants fled; and the second officer's observation that the Volkswagen was driving slowly and her belief that its occupants may have been searching for the fleeing Dodge occupants.

Williams requested a certificate of immediate review of the trial court's denial of his motion to suppress, which the trial court granted. This Court granted Williams's application for interlocutory appeal and we now affirm.

---

information and the officer acting on that information instead of the arresting officer's knowledge alone." (Citation and punctuation omitted.) *State v. Pennyman*, 248 Ga. App. 446, 446 (545 SE2d 365) (2001).

While probable cause is required for a warrantless arrest, a person may be lawfully seized for purposes of a brief investigation when only a reasonable and articulable suspicion exists. What is intended to be an investigatory detention can be transformed into a de facto arrest by the means of detention employed. However, a law enforcement officer who detains a person for purposes of investigation should not be denied the opportunity to protect himself from attack by a hostile suspect and may lawfully detain the person in a manner reasonably necessary to protect his personal safety and to maintain the status quo.

(Citation and punctuation omitted.) *Gray v. State*, 296 Ga. App. 878, 879-880 (1) (676 SE2d 36) (2009). We have previously held that in sufficiently dangerous circumstances, law enforcement officers may effect and maintain an investigatory detention by drawing weapons, forcing individuals to the ground, and/or handcuffing suspects without transforming the detention into a de facto arrest. See generally *Holsey v. State*, 271 Ga. 856, 861 (6) (524 SE2d 473) (1999), superceded by statute on other grounds as recognized in *Sealey v. State*, 277 Ga. 617, 620 (8) (593 SE2d 335) (2004) (holding that appellant removed at gunpoint and forced to lie prone was reasonably detained, not arrested, because of the danger inherent in approaching an uncooperative person suspected of committing a violent crime); *Gray*, 296 Ga. App. at 879-880 (1) (holding that appellant was not placed under de facto arrest when he

7

was removed from the couch and handcuffed during his investigatory detention for valid officer safety reasons).

Turning to the case at hand, we conclude that the same factors that justified the stop also support a finding that the circumstances were sufficiently dangerous to justify the officers' removing Williams from the Volkswagen at gunpoint and handcuffing him as part of their investigatory detention. The officers collectively had a reasonable suspicion that Williams and the other Volkswagen occupants were associated with the individuals in the Dodge. Those individuals had led police on a high-speed chase and left violent assault weapons in their abandoned vehicle. The relative locations of the two vehicles suggested that the Volkswagen was likely seeking (and may have contained) one or more of the fleeing Dodge occupants. And it was reasonable to suspect that the vehicle may have also contained weapons.

In sum, the touchstone of any Fourth Amendment analysis is reasonableness. See *State v. Holt*, 334 Ga. App. 610, 618 (780 SE2d 44) (2015). The officers' act of removing Williams at gun point and placing him in handcuffs, when considering the totality of the circumstances, was reasonable. See *Gray*, 296 Ga. App. at 880 (1) ("An officer must make quick decisions as to how to protect himself and others from possible danger, and the officer is not required to risk his life in order to effectuate

8

an investigatory detention.") (citation and punctuation omitted); see also *Stringer v. State*, 285 Ga. 842, 845 (2) (684 SE2d 590) (2009), disapproved on other grounds by *State v. Sims*, 296 Ga. 465 (769 SE2d 62) (2015); *Holsey*, 271 Ga. at 861-862 (6); *Johnson v. State*, 324 Ga. App. 508, 510 n.1 (751 SE2d 141) (2013). Compare *State v. Carr*, 322 Ga. App. 132, 136 (744 SE2d 341) (2013) (affirming trial court's ruling that officer's removal of appellant from vehicle at gunpoint and placing him in handcuffs was unreasonable and amounted to an unlawful arrest; appellant did not match description of the perpetrator, there was no report that the domestic violence perpetrator was armed, appellant was cooperative and had no warrants, the victim at the scene denied appellant was the perpetrator, and the arresting officer did not testify that she was concerned for officer safety).

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur*.